(No. 28912.—

CLARENCE MOYER, Appellant, *vs.* THE BOARD OF EDUCATION OF SCHOOL DISTRICT No. 186 *et al.*, Appellees.

*Opinion filed September 19, 1945.*

PFEIFER, FIXMER & GASAWAY, of Springfield, for appellant.

RICHARD PUTTING, and LESLIE G. PEFFERLE, both of Springfield, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

November 7, 1944, at a special school election, the electors of School District No. 186 of Sangamon county voted in favor of propositions to improve an existing school site of the district, in the city of Springfield, commonly known as the "Lanphier School Site," by the construction of an athletic field thereon, including a stadium, and, also, to issue bonds in the amount of $360,000 for the purpose of paying the cost of the improvement. At the same election, the voters rejected a third proposition authorizing the board of education to levy annually a tax for building purposes and the purchase of school grounds in excess of nine-twentieths of one per cent but not to exceed ten-twentieths of one per cent of the assessed valuation of taxable property within the district. The validity of the election is not challenged. January 8, 1945, the board of education adopted a resolution authorizing the issuance and sale of bonds in the sum of $260,000 for the purpose of constructing an athletic field, including a stadium, and providing for the levy of taxes sufficient to pay the principal of, and interest on, the bonded indebtedness as it becomes due. Thereafter, the plaintiff, Clarence Moyer, a qualified taxpayer, filed his amended complaint in the circuit court of Sangamon county against the defendants, the board of education of School District No. 186 and its seven members, seeking an injunction restraining issuance and sale of any bonds for the purpose of improving the Lanphier

school site. By his complaint, plaintiff alleges the resolution is void for the reasons that the board of education lacks authority to borrow money and to incur a bonded indebtedness as security therefor except for the purpose of building or repairing schoolhouses, or purchasing or improving school sites; that school districts enjoy the right to establish, equip, operate and maintain playgrounds, recreation grounds and athletic fields but are limited in financing the acquisition of the real estate and equipment therefor to payment out of the building fund of the districts and the subsequent cost of maintenance from the educational fund, and that, accordingly, the issuance and sale of the bonds would result in an illegal expenditure of tax moneys. Defendants' motion to strike plaintiff's pleading was sustained, and the amended complaint dismissed for want of equity. Plaintiff prosecutes a direct appeal, the revenue being involved.

Section 127½ of the School Law (Ill. Rev. Stat. 1943, chap. 122, par. 136a,) provides that the board of education of any school district having a population between 1000 and 100,000 inhabitants, and not governed by a special act, may borrow money for the purpose of building, altering or repairing schoolhouses or purchasing or improving school sites, and to issue its negotiable coupon bonds therefor. Section 1 of an act to authorize certain school districts to issue bonds for certain purposes provides that, for the purpose of building or repairing schoolhouses, or purchasing or improving school sites, any school district existing by virtue of any special charter, and governed by such special charter, and special or general school laws, whose boundaries are coextensive with or greater than the boundaries of any incorporated city, town or village, may borrow money and, as evidence of such indebtedness, issue bonds. (Ill. Rev. Stat. 1943, chap. 122, par. 322.) Plaintiff insists that the foregoing provisions restrict the issuance of

bonds to the purposes of building, altering or repairing schoolhouses or purchasing or improving school sites and that, since a stadium is neither a schoolhouse nor a school site, the issuance of bonds for the construction of a stadium on the Lanphier school site is without statutory authority.

Both plaintiff and defendants have recourse to an act authorizing school districts having a population of not more than 500,000 inhabitants to acquire real estate by gift, donation, devise, purchase or otherwise, for the purpose of establishing, maintaining and operating playgrounds, recreation grounds, and athletic fields, and to provide for the policy thereof. Section 1 of this statute (Ill. Rev. Stat. 1943, chap. 122, par. 339,) provides that any school district organized and existing under the general law or by special charter may hold not exceeding ten acres in area for the purpose of establishing playgrounds, recreation grounds and athletic fields, and to equip, operate and maintain them, the cost of acquiring the real estate and equipping it for playground, recreation ground or athletic field purposes to be paid out of the building fund of the district and the cost of maintenance and operation from its educational fund. Plaintiff insists that this enactment specifically controls the manner of obtaining and operating an athletic field, and points out that it grants no power to issue bonds for any purpose incident to playgrounds, recreation grounds and athletic fields. To support his contention that the financing of the proposed stadium must be governed solely by this statutory provision, and not by the various provisions previously summarized, giving boards of education power to issue bonds for the repair or building of schoolhouses, or purchasing or improving school sites, he invokes the familiar canon of statutory construction, as do the defendants, that a particular and specific enactment in a statute must prevail over general provisions on the subject, either in the same statute or in the general

laws relating thereto. *Robbins* v. *Comrs. of Lincoln Park,* 332 Ill. 571; *County of DeWitt* v. *Greene,* 320 Ill. 491; *Dahnke* v. *People,* 168 Ill. 102.

Plaintiff ignores completely the provisions of an act to provide for the health, physical education and training of pupils in the public schools, State teachers' colleges and State normal universities, approved July 22, 1943, and effective July 1, 1944. Section 1, (Ill. Rev. Stat. 1943, chap. 122, par. 523.1,) so far as relevant, provides that boards of education of public schools shall provide for the health, physical education and training of pupils of the schools under their control, and shall include physical education and training in the courses of study regularly taught therein. Section 2 declares that all pupils enrolled in the public schools shall be required to engage daily, during the school day, in courses of physical education for an instructional period equal in length to the regular periods of the school day. Section 3 describes the purposes of the courses in physical education and training as follows: (a) to develop organic vigor; (b) to provide bodily and emotional poise; (c) to provide neuromuscular training; (d) to prevent or correct certain postural defects; (e) to develop strength and endurance; (f) to develop desirable moral and social qualities; (g) to provide hygienic school and home life, and (h) to secure scientific supervision of the sanitation and safety of school buildings, playgrounds, athletic fields and equipment thereof. This section imposes upon the Superintendent of Public Instruction the duty of preparing and making available courses of instruction in physical education and training to be used as guides for the various grades and types of schools, in order to render effective the objectives proclaimed in the second section. Section 4 deals with the matter of physical examinations of pupils in the public elementary and secondary schools, and section 5 with courses for teachers in all State teachers' colleges and normal universities.

The foregoing provisions reflect the legislative intent to provide courses in physical education and participation in athletic activities by all students in the public schools of the State and impose the duty of executing the statute upon boards of education. From other statutory provisions, it is apparent the General Assembly intended that funds for building or improving school properties should be created by issuance of bonds and that school boards could then levy building-fund taxes for the purpose of retiring the bonds. It is true, as plaintiff urges, that the acquisition and equipment of property for playgrounds, recreation grounds and athletic fields shall be financed out of the building funds of school districts, and the subsequent cost of maintenance out of educational funds. It does not follow that the issuance of bonds to pay for the construction of an athletic field is prohibited. Defendants maintain that, since bonds may be issued for the purpose of purchasing or improving school sites, adequate authority exists for the issuance and sale of bonds to improve a school site by the construction of athletic facilities and, in particular, a stadium. The provisions relative to the construction and maintenance of physical educational facilities invoked by plaintiff cannot be isolated from other portions of the School Law providing for the issuance of bonds for the purposes of building, altering or repairing schoolhouses, or purchasing or improving school sites. Unless the provision with respect to issuing bonds for improving a school site is comprehensive enough to include improvements such as an athletic field, including a stadium, the statute authorizing the creation of playgrounds, recreation grounds and athletic fields and, also, the act of 1943 expressing the public policy of the State to provide courses of physical education for, and participation in athletic activities by, all students in the schools of the State, are nullities. This is particularly true since school districts and boards of education are precluded from accumulating

a surplus in their building funds sufficient to defray the cost of constructing an athletic field, including a stadium, of the character required here. *Mathews* v. *City of Chicago,* 342 Ill. 120.

The basic purpose of statutory construction is to render effective the purpose for which statutes are enacted. In arriving at the legislative intent, courts have recourse not only to the language used in the particular statute but, also, to the reasons motivating its enactment, the purpose to be accomplished, and the evils to be remedied, if any. Where two interpretations of a statute are permissible, one of which, predicated upon literal adherence to the language of the statute, makes the enactment mischievous if not absurd, and the other renders it reasonable and wholesome, the construction leading to an absurd result should be avoided. (*People ex rel. Simpson* v. *Funkhouser,* 385 Ill. 396.) Again, where the enactment of a series of statutes results in confusion and consequences which the legislature may not have contemplated, the acts must be so construed as to reflect the obvious intent and permit the pracical application of the statutes. (*York Community High School Dist.* v. *Wagemann,* 375 Ill. 193.) To accomplish this end, each statute is to be construed in the light of the general purposes and objects of the acts in order to effectuate the main intent and plan therein expressed. (*People* v. *Funkhouser,* 385 Ill. 396.) The provision authorizing playgrounds, recreation grounds and athletic fields must be considered in connection with the pertinent portions of the School Law authorizing the issuance of bonds for the purchase or improvement of school sites. School District No. 186 owns a school site, and it has been authorized by the electorate to improve the site by constructing an athletic field, including a stadium, for the purpose of providing adequate facilities for athletic activities, a mandatory course in the curriculum. Under the law, the proposed stadium is for a school purpose. As the trial judge per-

tinently observed: "The District is in possession of a site suitable for school purposes. It purposes to improve that site by erecting thereon buildings, seats,—all things that go to make up an athletic field, including a stadium. This is for the purpose of carrying on a distinct school purpose,—for adequately complying with the curriculum of the school which is a compulsory part of said curriculum. It seems to me that this is. a distinct addition and improvement to the District school system and its manner of carrying out its curriculum in a sufficient and efficacious manner."

In *People ex rel. Goodman* v. *University of Illinois Foundation,* 388 Ill. 363, this court recognized the fact, apart from any statutory provision, that grounds and buildings used for athletic purposes are a reasonable and necessary adjunct of recreational and educational processes. Our observation is fortified by the legislative intent manifested in the act of 1943. It cannot be said that an athletic field, including a stadium, is, in the light of the public policy declared by the General Assembly, an unnecessary adjunct of either the educational or recreational process. When the relevant statutory provisions are construed together, and not in isolation, the inevitable conclusion must be that the board of education of School District No. 186 has not only the power and authority to provide adequate facilities for physical education, but it may finance the construction of these facilities in the same manner ·as the acquisition of a school site or the erection of a schoolhouse thereon.

Our conclusion renders unnecessary consideration and disposition of the question argued by the parties, whether a stadium is a schoolhouse or a school site, within the contemplation of the applicable provisions of our School Law. It suffices to hold that since the General Assembly has made physical education a mandatory course in the curriculum of the public .schools of the State, and has au-

thorized and empowered school boards to construct athletic fields, and to equip, operate and maintain them, the power to issue bonds for the purpose of improving school sites extends to an improvement such as an athletic field, including a stadium. A contrary construction would render nugatory the salutary provisions of the law not only with respect to physical education courses but, also, the construction and maintenance of athletic fields.

The decree of the circuit court of Sangamon county is affirmed.

*Decree affirmed.*