838 P.2d 458 (1992)
114 N.M. 304
The REGENTS OF THE UNIVERSITY OF NEW MEXICO, Petitioner-Appellee,
v.
Mary Ann HUGHES, Director, Alcohol and Gaming Division of the New Mexico Department of Licensing and Regulation, City Council of the City of Albuquerque, Albert Chavez, City of Albuquerque Administrative Hearing Officer, Respondents-Appellants, and
The Southland Corporation, Real Party in Interest-Appellant.
Nos. 19834, 19845.
Supreme Court of New Mexico.
August 17, 1992.
Rehearing Denied September 9, 1992.
Sutin, Thayer & Browne, Jonathan B. Sutin and Gregory P. Smith, Albuquerque, for appellant Southland.
Tom Udall, Atty. Gen. and Lynda Latta, Asst. Atty. Gen., Santa Fe, for appellants Hughes, et al.
Charles N. Estes, Jr.; and Rodey, Dickason, Sloan, Akin & Robb, Joseph B. Rochelle, III, Albuquerque, for appellee Regents.

OPINION
MONTGOMERY, Justice.
These consolidated appeals present two issues of interpretation of certain provisions of the Liquor Control Act.[1] The first, and perhaps substantively more significant, issue is whether the word "school" in Section *459 60-6B-10, which prohibits issuance of a liquor license at a location within 300 feet of any church or school, is to be given a functional or a literal interpretation. (By "functional," we mean an interpretation focusing on the purposes for which property owned by a school is used, as opposed to a "literal" interpretation focusing only on the fact that the property is owned by a school.) The second issue is a procedural one, but apparently one of considerable importance to the appellant Director of the Alcohol and Gaming Division of the Department of Licensing and Regulation ("the Director"): whether a party protesting (or, presumably, seeking) a transfer of an existing liquor license, if aggrieved by a decision of the Director, is entitled to a statutory appeal under Section 60-6B-2(M).[2] (That section permits an appeal from a decision as to approval or disapproval of the issuance of a license, but says nothing about approval or disapproval of a transfer of a license.)
These two issues arise from an appeal by The Southland Corporation ("Southland") from a judgment of the Bernalillo County District Court reversing the Director's decision to authorize transfer of a liquor license to a location on Lomas Boulevard in Albuquerque, where Southland operates a 7-Eleven convenience store. The Regents of the University of New Mexico ("the Regents") protested Southland's application to transfer the license and, following the Director's approval of the application, brought suit in district court for review of the Director's decision. Entertaining the suit as an "appeal" authorized by Section 60-6B-2(M), the court overruled the Director on the ground that the location was within 300 feet of the University, which it held was a "school." Southland and the Director both appealed to this Court. We consolidated the appeals and now affirm the district court's decision to review the administrative proceeding as a statutory "appeal," but reverse the court's ruling that the location is within 300 feet of property used as a school.

I.
The University of New Mexico campus occupies an area of several hundred acres near the heart of downtown Albuquerque. It is bisected by Lomas Boulevard  a major, heavily commercialized, six-lane arterial thoroughfare running east and west. The University's "main" campus lies to the south of Lomas and encompasses many of the facilities of a modern, metropolitan university, such as classrooms, administration buildings, and dormitories. Several fraternities and sororities are also situated on the main campus, some quite near the 7-Eleven. On the other side of Lomas is the "north" campus, which comprises other university facilities, including the School of Medicine and the University Hospital, the School of Law, the Colleges of Nursing and Pharmacy, and the Department of Physics and Astronomy. Of pertinence to this appeal, there are also located on the north campus, as there are on the main campus, numerous parking lots, one of which is adjacent to the University's service center building (also described below as the "physical plant department"), which is used primarily for the custodial, groundskeeping, maintenance, and motor vehicle operations of the University. Along the southerly edge of this parking lot is a privately owned parking lot fronting on Lomas Boulevard, and across Lomas (to the south) is Southland's 7-Eleven store. The distance from the nearest corner of the store building to the service center parking lot is 295.51 feet; the distance from the northerly property line (bordering on Lomas) of the tract on which the store is located is 250 feet.
On April 14, 1988, Southland applied to the Director for the transfer of ownership and change of location of premises of a certain liquor license. The Director's hearing officer conducted a hearing, at which *460 the Regents protested on the grounds, among others, that the 7-Eleven was too close to the fraternity and sorority houses on the main campus and that additional traffic in the area would lessen the University's future control over such businesses. Although the hearing officer found that one or more UNM-owned or -leased fraternities were located within 300 feet of the store, he nonetheless recommended approval of the application on the basis that the property in question had at one time, prior to July 1, 1981, been the site of a delicatessen licensed to sell alcoholic beverages.[3]
The Director granted preliminary approval of the application and, pursuant to Section 60-6B-4(A), notified the City of Albuquerque of this action. The City held a public hearing under Section 60-6B-4(C) and thereafter notified the Director of its approval of the application. At the public hearing, attended by a representative of the Regents, the City hearing officer found that the proposed location for the license to be transferred was within 300 feet of a school, but recommended approval on the basis that liquor had been sold at the location prior to July 1, 1981. Both the hearing officer's finding and the University's contention that the location of Southland's store was within 300 feet of a school were based on the fact that a fraternity house, owned by the University and leased to the fraternity, was situated within the requisite 300 feet. Neither the City hearing officer nor the Regents took any position at this hearing concerning the location of the service center parking lot in the north campus across Lomas Boulevard from the 7-Eleven. Based on the recommendation of its hearing officer, the Albuquerque City Council approved the transfer of the license, and the Director thereupon gave final approval on October 18, 1988.
The Regents immediately filed a petition for appeal and an action for a declaratory judgment in the district court against the Director, the City hearing officer, and the City Council, seeking reversal of the City and the Director's approvals. Admittedly confused and concerned about the appropriate action by which to obtain review of those approvals, the Regents filed within a month a first amended petition for appeal and declaratory judgment or, in the alternative, for an alternative writ of mandamus. This was followed, less than two months later, with a second amended petition for appeal and declaratory judgment or, in the alternative, for a writ of mandamus or, in the alternative, a writ of certiorari. The district court issued an alternative writ of mandamus and then proceeded to two hearings on the merits. The first hearing was held in November 1989. At that hearing the court ruled that the fraternity house was not a school within the meaning of Section 60-6B-10, but the Regents argued that the location of the store was within 300 feet of the service center parking lot, which they asserted was part of the north campus and thus a school under Section 60-6B-10.
In June 1990, the court issued an order reaffirming its conclusion that the fraternity house was not a school for purposes of Section 60-6B-10. In the same order, the court remanded the case to the City hearing officer for (1) "further evidence concerning the distance and use of" the University property on the north side of Lomas and (2) findings and conclusions as to such distance and use and whether, based on such findings, there was a school located within 300 feet of Southland's property.
The City hearing officer then conducted a second hearing, at which Southland and the Regents presented evidence and argument *461 on the questions asked by the district court in its order of remand. The hearing officer issued a decision in August 1990, finding that, while the University was a school, neither the service center building nor the parking lot was used for instructional, educational, or other school purposes, and that the University parking lots, while an integral part of the University's property, were not used for educational or instructional purposes.
The hearing officer also made findings concerning the distance from the 7-Eleven to the property line of the north campus (the southerly boundary of the service center parking lot). Measuring from a corner of the 7-Eleven building in accordance with one of the Director's regulations, he found that the distance from the premises proposed to be licensed to the University property line was 295.51 feet.[4]
In November 1990, the district court held a second hearing at which it heard oral arguments, then entered findings of fact and conclusions of law, and then entered its order and judgment. The court reversed the Director's approval of Southland's application, but stayed the judgment for thirty days and during the pendency of any appeal.[5] The court did not receive evidence at either of its hearings; its findings of fact and conclusions of law were based on its review of the administrative record made before the City and the Director's hearing officers.
In its conclusions of law, the court ruled that, in light of the hearing officer's findings that the University was a school and that the distance from the 7-Eleven to the University property line was less than 300 feet, the City had a nondiscretionary duty to disapprove Southland's application to transfer the license. The court also concluded that it had jurisdiction to hear an appeal from the Director's final approval of a liquor license transfer and that, if it did not have such appellate jurisdiction, the Regents would have no plain, speedy, and adequate remedy at law. On the issue pressed so vigorously by Southland, see supra note 3, the court construed Section 60-6B-10 as requiring, in order for the "grandparent clause" in the section to apply, that a location be licensed on the effective date of the Liquor Control Act (July 1, 1981) and that the license be continuously maintained after that date until the date of an application to transfer the license.
Based on these conclusions, the court entered its judgment of March 6, 1991. Southland filed a motion for post-judgment relief,[6] which the court denied on April 3, 1991. Southland immediately filed its notice of appeal, and the Regents filed a notice of appeal two days later. On Southland's unopposed motion, we consolidated the two appeals.

II.
We take up first the issue raised by the Director's appeal (No. 19,845): the correctness of the district court's ruling that it had appellate jurisdiction to review the administrative proceedings leading to the Director's approval of Southland's application *462 to transfer the liquor license. This ruling was based on Section 60-6B-2(M),[7] which reads in pertinent part as follows:
Any person aggrieved by any decision made by the director as to the approval or disapproval of the issuance of a license may appeal to the district court of jurisdiction by filing a petition in the court within thirty days from the date of the decision of the director, and a hearing on the matter may be held in the district court.
The Director seizes on the word "issuance" in this statute and argues that the absence of any mention of a "transfer" of a license means that the legislature did not intend to permit a statutory appeal to be taken from a decision by the director to approve or disapprove an application to transfer a license. The Director is fortified in this contention by two decisions of this Court (decided under laws antedating the Liquor Control Act): City of Truth or Consequences v. State Dep't of Alcoholic Beverage Control, 84 N.M. 589, 589, 506 P.2d 333, 333 (1973) ("We know of no statute which allows an appeal from the action of defendant in transferring a liquor license."); Taggader v. Montoya, 54 N.M. 18, 22, 212 P.2d 1049, 1052 (1949) ("In the absence of a statute authorizing it, there can be no appeal from the decision of a special tribunal."). See also Crowe v. State ex rel. McCulloch, 82 N.M. 296, 297, 480 P.2d 691, 692 (1971) ("Plaintiffs concede [that a former statute], which gives the right of appeal from decisions of the Chief of Division, `as to the issuance' of `any additional license,' does not give the right to appeal from decisions authorizing a transfer of an existing license."). The decisions in these cases were reaffirmed in dictum in City of Santa Rosa v. Jaramillo, 85 N.M. 747, 748, 517 P.2d 69, 70 (1973), in which we upheld a district court's writ of mandamus compelling the then director of the Department of Alcoholic Beverage Control to cancel a license and to set aside his action authorizing its transfer. We said: "[T]he fact that a city has no right to an appeal does not mean that it cannot bring an action for a writ of mandamus. In other words, the City in Truth or Consequences, supra, merely misconstrued its remedy." Id. at 748-49, 517 P.2d at 70-71.
The Regents' confusion over the proper method to seek review of the Director's approval of Southland's application is therefore understandable. The potential for confusion was compounded as a result of a decision last year by our Court of Appeals in an opinion handed down while the present appeal was pending. Concerned Residents for Neighborhood Inc. v. Shollenbarger, 113 N.M. 667, 831 P.2d 603 (1991). There, on facts quite similar to those in the instant case, the court held, without discussing Santa Rosa, that mandamus was not the proper remedy to review an approval of a license transfer. The court stated that, instead of a writ of mandamus, the proper remedy was a writ of certiorari: "By pursuing a writ of certiorari, the residents [protestants] could have properly presented their arguments concerning their contention that the director erred in transferring the license. Because residents had an adequate remedy at law, a writ of mandamus was not available." Id. at 671, 831 P.2d at 607. The court did not discuss  apparently because it was not an issue in the case  whether an appeal of the director's decision might lie under Section 60-6B-2(M).
The court in Concerned Residents held that, although the residents-protestants had originally sought a writ of certiorari as an alternative to their petition for review and for a writ of prohibition, they had abandoned their request for certiorari and had relied only on their request for mandamus. Id. at 671, 831 P.2d at 607. The Director in the case at bar similarly argues that the Regents abandoned any request *463 for review by certiorari, while the Regents maintain, with cogent support in the record, that they adequately preserved their alternative request, in the event that review by appeal or by mandamus was not proper, for review by certiorari. We find it unnecessary to resolve this dispute, for we agree with the district court that the Director's decision was reviewable by way of the statutory appeal provided in Section 60-6B-2(M).
When the Liquor Control Act was enacted in 1981, the sharp distinction between issuance and transfer of a license argued for by the Director does not seem to have been present; and, as Judge Conway pointed out in the court below, Section 60-6B-3(D) spoke of a license "issued" and one "transferred" in practically the same breath. With the repeal of Section 60-6B-3(D) as apparently unnecessary, the Act still refers in some sections to a license "issued" in terms broad enough to encompass a license "transferred." Indeed, the first sentence of Section 60-6B-10, the section most prominently involved in these appeals and which is part of the original Act, refers only to a license "issued," although there is no question that the prohibition in the section applies equally to the transfer of a license.
What we are searching for is a legislative intent to grant an appeal to applicants or protestants in the case of the original issuance of a license, but to deny such a right to applicants or protestants where an already issued license is only proposed to be transferred. Certainly if such an intent were manifest in the words of the statute or by necessary implication therefrom, we would be obliged to give effect to that intent. New Mexico State Highway Comm'n v. Ferguson, 98 N.M. 680, 681, 652 P.2d 230, 231 (1982) ("We will construe a statute to give it its intended effect."). In such a case, we undoubtedly would hold that the district court lacked appellate jurisdiction and that the remedy of an applicant or protestant was by a writ of certiorari. See Durand v. New Mexico Comm'n on Alcoholism, 89 N.M. 434, 435, 553 P.2d 714, 715 (Ct.App. 1976) (citing N.M. Const. art. VI, § 13, and Roberson v. Board of Educ., 78 N.M. 297, 430 P.2d 868 (1967)).
But no reason suggests itself as to why the legislature would have conferred a right of district-court review in the one case and denied it in the other. Certainly the Director has not suggested any such reason. At oral argument, counsel maintained that review by certiorari is discretionary, whereas the statutory appeal of right is mandatory. While it may be true that in some cases a district court has the discretion to deny a writ of certiorari, the only distinction offered at argument was that certiorari requires a showing that the inferior court or tribunal has proceeded illegally, see Concerned Residents, 113 N.M. at 671, 831 P.2d at 607, whereas  the Director seems to be arguing  appeals may be entertained on other grounds. In this proffered distinction, however, we find no meaningful difference. Just as review by certiorari will lie when it is shown that the inferior court or tribunal has exceeded its jurisdiction or has proceeded illegally, Albuquerque Nat'l Bank v. Second Judicial Dist. Court, 77 N.M. 603, 604, 426 P.2d 204, 205 (1967), so any judicial review of administrative action, statutory or otherwise, requires a determination whether the administrative decision is arbitrary, unlawful, unreasonable, capricious, or not based on substantial evidence. E.g., Llano, Inc. v. Southern Union Gas Co., 75 N.M. 7, 11-12, 399 P.2d 646, 649 (1964); Swisher v. Darden, 59 N.M. 511, 515, 287 P.2d 73, 76 (1955). We take it that the words and phrases in the latter formulation, considered together, are synonymous with the word "illegal" in the former.
Not only is there no apparent reason for distinguishing between issuance and transfer when considering the availability of the statutory right of appeal, but there would seem to be good reasons for not drawing the distinction. The remedy of appeal under Section 60-6B-2(M) must be exercised by filing a petition in the district court within thirty days from the date of the director's decision. No time limit for application for a writ of certiorari is apparent in our statutes, except the general statute of limitations found in NMSA 1978, Section *464 37-1-4 (Repl.Pamp. 1990) (statute of limitations in actions not otherwise provided for is four years). With respect to this situation, there is a split of authority on the question whether a general statute of limitations is applicable. See 14 Am.Jur.2d Certiorari § 30, at 806-07 (1964) (describing conflict in authority).
The question appears to have been answered in New Mexico, but the answer does not yield a clear-cut rule as to how soon an application must be filed for judicial review of the director's approval or disapproval of an application to transfer a license. In Eigner v. Geake, 52 N.M. 98, 192 P.2d 310 (1948), noting the absence of a rule or statute fixing the time within which certiorari must be sought, we held that principles of laches apply so as to bar a petition for certiorari not filed within three months from entry of the decision sought to be reviewed. Id. at 99, 192 P.2d at 310. Then, in Board of Education v. Rodriguez, 77 N.M. 309, 422 P.2d 351 (1966), we held that when the time for taking an appeal from the district court to this Court was shortened from three months to thirty days, the time for applying for a writ of certiorari was also shortened to the same period. Id. at 311, 422 P.2d at 352. We said: "The question of whether the appeal is timely thus turns on what can be said is a `reasonable time.'" Id. Quoting and paraphrasing Eigner, we went on to observe that there was no good reason why a party should have more time to perfect an appeal from an administrative agency to the district court than the party would have to take an appeal for review of a decision of the district court in an ordinary case. Id. at 312, 422 P.2d at 352.
After these cases, we decided Roberson v. Board of Education, 78 N.M. 297, 430 P.2d 868 (1967). In that case we recognized that, for laches to apply, "`lapse of time alone does not necessarily imply an unreasonable delay in bringing suit, but it must also appear that the delay has worked to the injury of another.'" 78 N.M. at 303, 430 P.2d at 874 (quoting Sharpe v. Smith, 68 N.M. 253, 257, 360 P.2d 917, 919 (1961)). We held in Roberson that a delay of fifteen and one-half months from entry of the decision sought to be reviewed would not bar the petitioner's application for certiorari, when the petitioner had mistakenly been prosecuting an appeal from the agency's decision and the agency had suffered no prejudice from the passage of time. Id.
Our cases recognize that application of the doctrine of laches depends upon the circumstances of each case. E.g., City of Raton v. Vermejo Conservancy Dist., 101 N.M. 95, 100, 678 P.2d 1170, 1175 (1984); Mechem v. City of Santa Fe, 96 N.M. 668, 671, 634 P.2d 690, 693 (1981). Factors besides delay and prejudice to the opposing party must be present before the doctrine of laches will be invoked. See, e.g., Garcia v. Garcia, 111 N.M. 581, 588, 808 P.2d 31, 38 (1991) (citing cases and listing factors). Instead of a rule that the time to seek review of a director's decision granting or denying transfer of a liquor license depends on the amorphous concept of laches, we think it preferable for the fixed statutory period (thirty days) in Section 60-6B-2(M) to govern.
In Roberson, we said that, generally speaking, "the presence of the right to appeal makes inappropriate and unavailable the right to certiorari." 78 N.M. at 300, 430 P.2d at 871. Applying that proposition to the present case, we feel obliged to disapprove Concerned Residents to the extent that it holds or implies anything contrary to our decision in this case. We hold that the district court in this case was correct in ruling that the Director's decision approving Southland's application to transfer the license was reviewable in a statutory appeal under Section 60-6B-2(M).

III.
We turn now to Southland's appeal (No. 19,834) from the district court's judgment reversing the Director's approval of Southland's application. As noted previously, the court based its action on its conclusion that, since the University's north campus (which the City hearing officer had found to be part of a "school") was located within 300 feet of the proposed licensed premises, the Director's approval *465 of the transfer was contrary to Section 60-6B-10. The first sentence of that section reads: "No license shall be issued by the director for the sale of alcoholic beverages at a licensed premises where alcoholic beverages were not sold prior to July 1, 1981 which is within three hundred feet of any church or school."
The Regents' approach to interpreting this statute is (understandably, but still interestingly) at variance with its approach to interpreting Section 60-6B-2(M), discussed above. At one point in the Regents' brief discussing Section 60-6B-2(M), the Regents criticize the Director for elevating form over substance; at another point, the Regents quote approvingly from a Southland memorandum brief to the trial court saying, "as a functional matter, this is an appeal from the decision of the Director, with respect to his decision about a liquor license." (Emphasis added.) And yet the Regents take a very different approach in interpreting Section 60-6B-10, saying, in effect,[8] "A school is a school is a school."
We certainly do not disagree with the City hearing officer's finding that the University of New Mexico is a school; we question only the district court's assumption that it follows inexorably that a proposed licensed premises within 300 feet of any part of the University, regardless of the use to which that part is put, is ipso facto within 300 feet of a school as contemplated by the statute. A sentence appearing later on in the text of Section 60-6B-10 reads: "For the purposes of this section, all measurements taken in order to determine the location of licensed premises in relation to churches or schools shall be the straight line distance from the property line of the licensed premises to the property line of the church or school." This sentence, focusing as it does on the boundary of the property nearest the licensed premises, seems to us to call for, or at least permit, an inquiry into the nature of the property so bounded  i.e., to what use is that property being put; is it used for school (or church) purposes or for some other purpose having no relation to the object of the statute?
The district court, in its June 1990 order of remand to the City hearing officer, appeared to contemplate just such an inquiry. It directed the hearing officer to take further evidence concerning the distance and use of the University property on the north side of Lomas Boulevard and across from the 7-Eleven, and to enter findings and conclusions on that distance and use. In its later findings and conclusions, however, the district court ignored the findings by the hearing officer that the University property in question was not used for educational or instructional purposes and that the instructional facility closest to the licensed premises was the Physics and Astronomy building, located at some unspecified, but obviously considerable, distance from the 7-Eleven.
The Liquor Control Act does not define the word "school." The word is defined, however, in our Public School Code. NMSA 1978, Section 22-1-2 (Cum.Supp. 1992), defines a school as "any supervised program of instruction designed to educate a person in a particular place, manner and subject area." This definition is not controlling in interpreting the Liquor Control Act, but it provides some guidance in determining when a 300-foot "buffer zone" around a piece of property owned by a school should be afforded the protection required by Section 60-6B-10.
A regulation promulgated by the Department of Alcoholic Beverage Control, No. 6B-10.(A), provides:
All measurements for the purpose of determining the location of designated premises in relation to * * * schools * * * shall be direct line measurements between the actual limits of the real property of the * * * school * * * in which there is regularly conducted * * * educational functions * * *; and the building in which the liquor is proposed to be sold.
This regulation, interpreting a provision of the Liquor Control Act and promulgated pursuant to statutory authority, Section *466 60-4B-5(B)(1), is presumed to be a proper implementation of the provisions of the Act. Section 60-4B-5(F).[9] And, of course, it is hornbook law that an interpretation of a statute by the agency charged with its administration is to be given substantial weight, Klumker v. Van Allred, 112 N.M. 42, 47, 811 P.2d 75, 80 (1991); City of Raton v. Vermejo Conservancy Dist., 101 N.M. 95, 99, 678 P.2d 1170, 1174 (1984), and is entitled to judicial deference, Texas Nat'l Theatres v. City of Albuquerque, 97 N.M. 282, 286, 639 P.2d 569, 573 (1982). We therefore think it important that the Director has interpreted the statute at issue here as focusing on "the real property * * * in which there [are] regularly conducted * * * educational functions * * *."
We thus apply a functional test to decide whether property located within 300 feet of a proposed licensed premises is or is not a school. Although the results and accompanying rationales of the cases around the country vary widely, see generally M.C. Dransfield, Annotation, "School," "Schoolhouse," or the Like Within Statute Prohibiting Liquor Sales Within Specified Distance Thereof, 49 A.L.R.2d 1103 (1956), the test we adopt is consistent with the approach applied in at least some of the cases. For example, in Pennsylvania Liquor Control Board v. Ripley, 107 Pa.Cmwlth. 425, 529 A.2d 39 (1987), the court affirmed a lower court's reversal of the Board's denial of an application for a liquor license. One of the bases for the denial was that the applicant's restaurant was within 300 feet of a vacant lot owned by a church. The appellate court's reasoning was simple: "There is no evidence that the plot of ground is used in connection with any Church activities." Id. 529 A.2d at 42. See also Little Giant Food Stores, Inc. v. State Dep't of Pub. Safety, 416 So.2d 128, 130 (La. Ct. App. 1982) (denial of beer permit to store reversed; contrary interpretation "would deny permits to premises within the proscribed distance of a church owned, non-contiguous parking lot operated for profit").
Other cases, while affirming denials or reversing grants of licenses, have likewise employed a functional analysis focusing on the purpose for which the property within the proscribed distance was used. See, e.g., In re Jack's Delicatessen, Inc., 202 Pa.Super. 481, 198 A.2d 604 (1964) (license denied where place to which transfer was sought was within 300 feet of farm land used by school for emotionally disturbed children); In re Di Rocco, 167 Pa.Super. 381, 74 A.2d 501 (1950) (license denied where place to be licensed was within 300 feet of land where school building was in process of being erected).
Many of the cases rely upon, or at least consider, the purpose of the statutory prohibition of a liquor establishment within the proscribed distance of a church or school. For example, in Smith v. Ballas, 335 Ill. App. 418, 82 N.E.2d 181 (1948), the court observed:
It is common knowledge that loud and profane language, as well as the alcoholic release of conduct inhibitions, are more apt to be associated with taverns than other businesses. When children are in class rooms within the school building, the effect of a nearby tavern is negligible; it is when they are at play on the grounds, unsupervised, that the undesirable influences of a tavern might operate.
Id. 82 N.E.2d at 183. In a similar vein, though perhaps in somewhat less vivid language, our Attorney General has described the purpose of a former statute carrying out the 300-foot prohibition now found in Section 60-6B-10 as follows:
The purpose for such a restriction on the permissible location of a premises licensed *467 to sell alcoholic liquor is to protect the area occupied by a church or school, including its yards and grounds, from the inimical milieu commonly associated with establishments selling alcoholic beverages.
AG Op. No. 74-18 (1974).
We see no need to protect the workers and others who may use the University service center and associated parking lot from the "inimical milieu" of the 7-Eleven Food Store located on the other side of Lomas Boulevard.
We do not mean to imply that only the building or other structure used for educational purposes falls within the definition of "school" and that adjacent property, even if used for a parking lot, may not be considered as meeting the functional test we have adopted. However, any such adjacent land must be used for school purposes, which may include the parking of vehicles used by students in attending classes or otherwise participating in educational or instructional activities. See La Loma, Inc. v. City & County of Denver, 40 Colo. App. 55, 572 P.2d 1219, 1220 (1977) ("Land owned by the school board and used for the purpose of carrying out the physical education and athletic programs of the school is * * * `land used for school purposes.'") (citing Moyer v. Board of Educ., 391 Ill. 156, 62 N.E.2d 802 (1945)).
In the present case, the City hearing officer found that the service center building and adjacent parking lot were not used for educational or instructional purposes. This finding has not been attacked as unsupported by substantial evidence, so it is controlling. The district court, while concluding at one point that a fraternity house located less than 100 feet from the 7-Eleven and owned by the University was not a school, incorrectly concluded that the University property across Lomas was used for school purposes. In this the court erred, and its judgment must be reversed.

IV.
The judgment, insofar as it entertains the Regents' appeal from the Director's decision (Cause No. 19,845 in this Court), is affirmed. The judgment, insofar as it reverses the Director's decision approving Southland's transfer of the liquor license to the licensed premises on Lomas Boulevard (Cause No. 19,834 in this Court), is reversed, and the case is remanded with instructions to enter an order affirming the Director's decision. Southland is awarded its appellate costs against the Regents; the Director and the Regents shall bear their own costs, if any.
IT IS SO ORDERED.
BACA and FROST, JJ., concur.
NOTES
[1] The Liquor Control Act is compiled as Articles 3A, 4B, 4C, 5A, 6A, 6B, 6C, 7A, 7B, and 8A of Chapter 60 of the 1978 recompilation of our statutes. NMSA 1978, § 60-3A-1 (Repl.Pamp. 1992). Unless otherwise indicated, all citations in this opinion to provisions of the Liquor Control Act are to the sections of the Act as compiled in the 1992 Replacement Pamphlet.
[2] Other issues besides the two mentioned in the text were raised in the proceedings below and have been argued on this appeal. We shall refer to and comment upon some of those issues in this opinion; however, our disposition of the appeal turns on resolution of the two issues stated in the text.
[3] The delicatessen ceased operations at the site in the fall of 1980, and no license covered the site from that time until Southland filed its application with the Director in April 1988. In recommending approval of the application, the hearing officer was relying on the phrase "where alcoholic beverages were not sold prior to July 1, 1981" in § 60-6B-10. Southland vigorously asserts on this appeal that the hearing officer's interpretation was correct; the district court concluded otherwise. Although we are inclined to agree with the district court  since Southland's interpretation would mean that any previously issued license at a particular location, no matter how long before July 1, 1981, would insulate the location from the prohibition in § 60-6B-10  we need not reach this issue in deciding this appeal, despite its extensive briefing by the parties.
[4] The hearing officer made no finding as to the distance from the store's property line to the University property line, but it appears undisputed that this distance is 250 feet.
[5] As a result of the court's stay, Southland has been operating the transferred liquor license at the 7-Eleven store since (and for a few months before) the court's judgment on March 6, 1991.
[6] Southland's post-judgment motion sought to present testimony and other evidence regarding, among other things, the University's alleged procurement of or agreement to the issuance of special dispenser's permits for the sale of alcoholic beverages within 300 feet of University property, and on University property, when no license had existed at such locations before, on, or after July 1, 1981. The court denied the motion on the basis, among others, that its scope of review was limited to the evidence presented to the hearing officer. Southland has pursued its claim on this appeal, arguing that the Regents' position here is inconsistent with its own past practices, is precluded by an estoppel arising from those past practices, and is otherwise unfair and inequitable. In view of our disposition of Southland's appeal, and putting aside the fact that the district court was hearing a statutory appeal from an administrative decision, not an original action at which it had received evidence and might receive further evidence under SCRA 1986, 1-059 and 1-060, we find it unnecessary to consider Southland's contentions with respect to its post-judgment motion.
[7] The court also relied on NMSA 1978, § 60-6B-3(D) (Repl.Pamp. 1987), which until its repeal, 1991 N.M. Laws, ch. 257, § 2, provided that any license issued under the Liquor Control Act could be transferred to any location not otherwise contrary to law. The court evidently relied on this section because of its reference to a transfer in the context of a license "issued" under the Act. This provision does not appear to have been carried forward in the current version of the Act.
[8] And with apologies to Gertrude Stein.
[9] The part of the regulation prescribing that distances shall be measured to "the building in which the liquor is proposed to be sold" is probably invalid as conflicting with the statutory requirement that the measurement begin at "the property line of the licensed premises." Southland's insistence that the proper beginning point of the measurement was the corner of the 7-Eleven building, rather than the property line of the tract on which the store is located, seems therefore to be misplaced. This issue, however, is irrelevant for purposes of this case, given our conclusion that the property at the other end of the measurement  the service center building and associated parking lot  is not used for school purposes.