882 P.2d 511

**BOARD OF EDUCATION OF CARLS-
BAD MUNICIPAL SCHOOLS,
Applicant–Appellee,**

v.

**Roger L. HARRELL, Respondent–
Appellant.**

No. 20856.

Supreme Court of New Mexico.

Sept. 2, 1994.

W.T. Martin, Jr., P.A., W.T. Martin, Jr.,
Carlsbad, for appellant.

Simons, Cuddy & Friedman, C. Emery
Cuddy, Jr., Charles D. Noland, Santa Fe, for
appellee.

## OPINION

MONTGOMERY, Chief Justice.

This appeal raises two broad questions: (1)
Whether a statute providing for compulsory
arbitration of a dispute between an individual
and an agency of the state is constitutional;
and (2), if it is, whether the same statute's
sharp constriction of judicial review of the
arbitrator's decision is likewise constitutional.

In the context of this case, the more specific questions presented are (1) whether
NMSA 1978, Section 22–10–17.1 (Repl.Pamp.
·1993), providing for compulsory arbitration of
an appeal from ·a school board's decision to
discharge a certified school employee is generally constitutional; and (2) if it is, whether
the limitation on judicial review of the arbitrator's decision to issues of "corruption,
fraud, deception or collusion" in Subsection
22–10–17.1(M) is also constitutional.

We hold that the overall statutory procedure, calling for compulsory arbitration of
these disputes, is constitutional, but that the
limitation on judicial review in Subsection
22–10–17.1(M) is not. Because the trial court
whose decision is here under review upheld
the statute in all respects, we reverse its
judgment confirming the arbitration award
and remand for further proceedings.

## I. FACTS

The Board of Education of the Carlsbad
Municipal School District (the Board) hired
Roger L. Harrell as the school district superintendent in 1978. Harrell, a certified school
administrator, continued his employment
with the school district pursuant to successive two-year contracts until March 1990.

By early 1990 the relationship between
Harrell and the Board had·severely deteriorated. On January 16, 1990, the Board met
in executive session and evaluated the superintendent's job performance. During this
meeting, a ·majority of the Board expressed
dissatisfaction with Harrell's performance in
a number of areas and decided to suspend

him with pay pending an investigation. As a result of the investigation, the Board issued a notice of intent to discharge on March 12, 1990. The notice detailed twenty-three separate charges or grounds alleged to constitute "good and just cause" for discharge.[1] The Board scheduled a meeting on March 12 to offer Harrell an opportunity to respond to the allegations. Harrell attended the meeting with counsel but, after objecting to the format of the meeting, departed before presenting his response to the charges. The Board subsequently voted to discharge him and issued a written decision to that effect.

Harrell appealed the Board's decision to an arbitrator in accordance with Section 22–10–17.1.[2] The arbitrator heard eighteen days of evidence presented by the parties, as well as argument and briefing of legal issues by counsel, and affirmed the Board's action in a seventy-eight page arbitration award consisting of 282 findings of fact and 37 conclusions of law. The arbitrator concluded that the Board had good and just cause to discharge Harrell, based on the following facts (among others): Harrell had failed to keep proper records and to complete required forms for travel authorization and reimbursement; had adopted a standard for his own reimbursement below that expected for all other employees in the school district; and had failed to keep accurate records of his attendance, sick leave, annual leave, and other absences from his job. The arbitrator also found that Harrell had abused his office by using school district personnel and school district facilities to carry on his own personal business affairs, by facilitating and influencing the award of a contract to a firm in which his son was involved, and by failing to make full and complete disclosure of this conflict to the Board. The arbitrator made various other findings, including one of insubordination by openly expressing his defiance of a Board directive.

The Board applied to the district court for confirmation of the award, and Harrell responded by requesting that the court declare Section 22–10–17.1 unconstitutional and the arbitration award void. The court rejected Harrell's arguments and confirmed the award on August 25, 1992.

Harrell appeals from the court's judgment confirming the arbitration award. He argues that compulsory arbitration, as mandated by Section 22–10–17.1, (1) denies due process in that the Rules of Civil Procedure and the Rules of Evidence do not apply to the proceedings, the statute does not require the arbitrator to be an attorney or a judge, and the statute unconstitutionally limits judicial review of the arbitrator's decision; (2) abridges the right to trial by jury; (3) unconstitutionally denies access to the courts; and (4) is an unconstitutional delegation of judicial power. We discuss these issues in this opinion, though grouped somewhat differently and in a somewhat different order.

## II. COMPULSORY ARBITRATION OF SCHOOL–EMPLOYMENT DISPUTES

As just indicated, Harrell mounts his due-process challenge to Section 22–10–17.1 on two distinct grounds: that the procedures in the arbitration proceeding itself are deficient, and that the judicial-review provision in the statute improperly limits review. The Board correctly recognizes that this appeal involves the same two basic issues: the constitutionality of compulsory arbitration as the exclusive method by which a certified school employee may obtain review of his or her discharge from employment and the constitutionality of restricting judicial review to issues involving "corruption, fraud, deception or collusion." We discuss the first of these issues in Part III of this opinion and the second in Part IV. Before proceeding with that discussion, we think it helpful to trace briefly the legal history of school-employment disputes in

---

1. Harrell's contract provided: "This Contract may be cancelled by the Board for cause, including unsatisfactory work performance, incompetency, insubordination, physical or mental inability to perform the required duties or for any other good and just cause...." Discharge of certified school employees is also governed by statute: "A local school board or the governing authority of a state agency may discharge a certified school employee only for just cause...." NMSA 1978, § 22–10–17(A) (Repl.Pamp.1993).

2. The arbitrator was a highly respected New Mexico attorney, Stuart D. Shanor.

New Mexico and to discuss, in general, the procedure currently provided by New Mexico law for resolving those disputes: compulsory arbitration.

## A. History of School–Employment Disputes

School-employment disputes in New Mexico have historically been resolved by the State Board of Education (the State Board). The legislature first defined the extent of the State Board's power to resolve grievances of discharged school teachers in 1925, when it amended a 1923 law to require that no teacher could be discharged without "full hearing and the right of appeal to the state board of education." NMSA 1929, § 120–1105. The State Board was given the power to institute legal proceedings, at which it was required to "explain the true intent and meaning of the law, and [to] decide without expense to the parties concerned, all controversies and disputes that arise under it, and their decision shall be final." NMSA 1929, § 120–101. When a teacher was discharged, he or she had a right to appeal to the State Board, but the State Board's decision was final.

The constitutionality of this statute (then compiled as NMSA 1941, § 55–101) was challenged in *McCormick v. Board of Education,* 58 N.M. 648, 274 P.2d 299 (1954). The appellants argued in *McCormick* that the State Board, as a part of the executive branch of government, had been given judicial powers under Section 55–101 in violation of Article III, Section 1, of the Constitution. They further contended that the statute was unconstitutional because it failed to provide for judicial review of the Board's decision.

This Court held that the judicial powers conferred upon the State Board by the legislature "fall clearly within the constitutional authority conferred upon the State Board of Education for 'the control, management and direction of all public schools,'" and that within the area prescribed by Article XII, Section 6, of the Constitution (creating the State Board and defining its powers) "the decisions of the State Board of Education are final and conclusive as between the parties, and not subject to review." *McCormick,* 58 N.M. at 660–61, 274 P.2d at 307. This hold-

ing was qualified, however, by the Court's recognition that the judiciary retained jurisdiction over purely legal questions and that the State Board's action "would be subject to review on the ground that it was wholly arbitrary, unlawful, unreasonable or capricious." *Id.* at 661, 274 P.2d at 307.

The statutory scheme governing appeals from decisions of local school boards to discharge certified employees evolved from the time of *McCormick* to provide specifically for review by the New Mexico Court of Appeals of an employee's appeal to the State Board for a determination of whether the State Board had acted arbitrarily, unreasonably, unlawfully, or capriciously. *See* NMSA 1953, § 77–8–17 (Supp.1973); NMSA 1978, § 22–10–20. This scheme was replaced by N.M. Laws 1986, Chapter 33, Section 25, the current version of which is compiled as Section 22–10–17.1. The hearing on review of a local school board's decision is now held before an independent arbitrator instead of before the State Board, and judicial review of the arbitrator's decision is limited to whether "the decision was procured by corruption, fraud, deception or collusion." *See* §§ 22–10–17.1(A), (M).

The questions before us are whether an independent arbitrator (in place of the State Board) may review a local board's decision and issue an arbitration award and whether that award may properly be subjected to the limited review contemplated by Subsection 22–10–17.1(M).

## B. Voluntary vs. Compulsory Arbitration

 Normally, arbitration is a process in which parties voluntarily contract to select an impartial third person—an arbitrator—to whom they refer their dispute for a decision based on evidence and arguments before the arbitration tribunal, in order to obtain a speedy and inexpensive final resolution of the dispute. 1 Martin Domke & Gabriel M. Wilner, *Domke on Commercial Arbitration* § 1:01 (rev. ed. 1993); *see also Fernandez v. Farmers Ins. Co.,* 115 N.M. 622, 625, 857 P.2d 22, 25 (1993). Judicial review of voluntary, consensual arbitration is generally limited to allegations of fraud, partiality, misconduct, excess of powers, or technical problems

in making the award, *see* NMSA 1978, §§ 44–7–12 and –13 (provisions governing review under Uniform Arbitration Act); the district court does not have the authority to review arbitration awards for errors as to the law or the facts, *Fernandez*, 115 N.M. at 625–26, 857 P.2d at 25–26. The limited scope of judicial review of arbitration awards is appropriate when the parties have voluntarily bargained for the decision of an arbitrator and, presumably, have assumed the risks of and waived objections to that decision. *American Universal Ins. Co. v. DelGreco*, 205 Conn. 178, 530 A.2d 171, 176 (1987).

Arguably, Harrell voluntarily consented to submit his employment discharge grievance to binding arbitration. His contract of employment with the Carlsbad Board of Education contained a clause stating:

> This contract may be canceled by the Board for cause, including unsatisfactory work performance, incompetency, insubordination, physical or mental inability to perform the required duties or for any other good and just cause, provided, that any such cancellation may be effected only in accordance with the New Mexico Statutes and any applicable rules and regulations of the State and Local Boards of Education.

The terms of Harrell's contract thus implicitly provided that it could be canceled in accordance with the applicable New Mexico statute, Section 22–10–17.1, which requires that any appeal from the local board's decision be submitted to final and binding arbitration. When Harrell agreed to the terms of the contract, he arguably agreed to the arbitration procedure contained in the statute. *See, e.g., Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A.*, 728 F.2d 577, 580 (2d Cir.1984) (holding membership in New York Stock Exchange, with concomitant obligation to be bound by arbitration provisions of its constitution and rules, sufficient to constitute consent to arbitration of covered disputes, whether or not arbitration provisions are specifically incorporated in contract).

■ We hold, however, that Harrell's putative agreement to arbitrate was in reality a nonconsensual submission to a statutorily imposed requirement of mandatory arbitration. The term of his employment agreement subjecting him to arbitration was not negotiable, *see Wilson v. Security Ins. Group*, 199 Conn. 618, 509 A.2d 467, 471 (1986) (legislative interference with contractual freedom, restricting party's choice of judicial forum, renders arbitration compulsory rather than voluntary); and Harrell, as the weaker party in the transaction, had no power to alter the employment relationship, *see Moore v. Fragatos*, 116 Mich.App. 179, 321 N.W.2d 781, 785 (Ct.1982) (party in civil proceeding seeking to assert waiver of constitutional right of access to courts must establish that waiver was made knowingly, voluntarily, and intelligently). When arbitration is statutorily mandated as the sole method for resolution of a particular dispute, the arbitration is not consensual even if a provision for such arbitration is incorporated into a contract. Arbitration required by statute is compulsory; arbitration freely entered into by contract is voluntary. *Bodner v. United Servs. Auto. Ass'n*, 222 Conn. 480, 610 A.2d 1212, 1216–17 (1992); *Nelsen v. Colleary*, 152 Misc.2d 81, 574 N.Y.S.2d 912, 914 (App.Div. 1991).

■ Because of the compulsory aspect of the procedure, the person whom the statute calls an "independent arbitrator" is more like an independent hearing officer resolving disputes within an administrative agency than a true arbitrator consensually chosen by the parties to an agreement. The commentary to the *Restatement of Judgments* notes this distinction:

> Arbitration is a method of determining legal disputes that is authorized by contract between the parties to the dispute. There are forms of dispute-resolution procedure that are called "arbitration" but which are made obligatory by law instead of being prescribed by contract, for example, some proceedings in "no fault" insurance schemes. These procedures might perhaps better be regarded as adjudication before specialized tribunals. See § 83 [ (discussing preclusive effect of adjudicative determination by administrative tribunal) ].

*Restatement* (Second) of *Judgments* § 84 cmt. a (1982) (discussing preclusive effect of arbitration award).

The similarity between compulsory arbitration and an administrative adjudication thus makes caselaw on the constitutional validity of administrative adjudications instructive in assessing the validity of Section 22–10–17.1. As noted by the New York Court of Appeals, "[T]he device of arbitration is a substitute for a determination of the dispute by an administrative or regulatory agency. As a substitute device, however, its objective may not be accomplished under lower constitutional standards than would be required of an administrative or regulatory agency." *Mount St. Mary's Hosp. v. Catherwood,* 26 N.Y.2d 493, 311 N.Y.S.2d 863, 260 N.E.2d 508, 516 (1970).

## III. THE CONSTITUTIONALITY OF THE ARBITRATION PROCEEDING ITSELF

*A. Due Process*

■ While voluntary arbitration may be conducted using any procedure acceptable to the participants, compulsory arbitration must comport with due process. "[V]oluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural and substantive due process." *Mount St. Mary's Hosp.,* 311 N.Y.S.2d at 873–74, 260 N.E.2d at 511. Harrell maintains that the Board's actions denied him due process in three respects: First, by suspending him without giving him an opportunity to be heard prior to the suspension; second, by utilizing the provisions of Section 22–10–17.1 which provide, *inter alia,* that neither the Rules of Civil Procedure nor the Rules of Evidence apply to the arbitration proceedings and do not require that the arbitrator be an attorney or a judge; and third, by invoking the limited judicial review of the arbitrator's decision provided by the statute. We hold that Harrell was not entitled to a hearing prior to his suspension and that the proceedings before the arbitrator satisfied

due process. We discuss the due process requirements for judicial review of compulsory arbitration in Part IV of this opinion.

■ The Fourteenth Amendment to the U.S. Constitution guarantees citizens the right to procedural due process in state proceedings. *Reid v. New Mexico Bd. of Examiners in Optometry,* 92 N.M. 414, 415, 589 P.2d 198, 199 (1979). Before a procedural due process claim may be asserted, the plaintiff must establish that he was deprived of a legitimate liberty or property interest and that he was not afforded adequate procedural protections in connection with the deprivation. *Barreras v. New Mexico Corrections Dep't,* 114 N.M. 366, 370, 838 P.2d 983, 987 (1992). The definition of property centers on the concept of entitlement; therefore, interests in government benefits will be recognized as constitutional "property" if the person can be deemed "entitled" to them. 2 Donald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 17.5, at 628 (2d ed. 1992).

■ Applying these principles, we find no merit in Harrell's claim that the Board's failure to provide him a hearing before suspending him violated due process. He was suspended on January 17, 1990, and he continued to receive his salary until his employment ceased after the hearing on March 12, 1990. His contract and Section 22–10–17 (establishing standards and procedures for discharge of certified school employees) afforded him only the right to be fully compensated; he had no right to occupy the office of superintendent. *See Royster v. Board of Trustees,* 774 F.2d 618, 621 (4th Cir.1985) (holding that property interest in continued expectation of public employment does not include right to actually occupy position), *cert. denied,* 475 U.S. 1121, 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986). Therefore, his claim of entitlement to employment was satisfied so long as he continued to receive the full compensation due under his contract. As the Tenth Circuit Court of Appeals has noted, "suspension with pay [does] not invade any recognized property interest." *Pitts v. Board of Educ.,* 869 F.2d 555, 556 (10th Cir.1989); *see also Black v. Board of Educ.,*

87 N.M. 45, 46, 529 P.2d 271, 272 (1974) (holding that suspended school superintendent was not entitled to due process guarantees afforded discharged certified school personnel). Because the Board did not deprive Harrell of any property interest by suspending him with pay, he was not entitled to due process protections prior to suspension.

We similarly reject Harrell's claim that a hearing under Section 22–10–17.1 violates due process because the arbitrator does not have to be a judge or an attorney and because the Rules of Civil Procedure and Evidence are not prescribed for the hearing. Due process requires that the proceedings looking toward a deprivation be essentially fair. *Reid,* 92 N.M. at 416, 589 P.2d at 200; *see also* 2 Rotunda & Nowak, *supra,* § 17.8, at 656 ("The essential guarantee of the due process clause is that of fairness. The procedure must be fundamentally fair to the individual in the resolution of the factual and legal basis for government actions which deprive him of life, liberty or property."); *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). Due process considerations are flexible; the circumstances of the case determine the requirements. *Gonzalez v. Gonzalez,* 103 N.M. 157, 163, 703 P.2d 934, 940 (Ct.App.1985). In *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the United States Supreme Court established three factors to be considered in determining what procedures are required:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court held, using the *Mathews* balancing test, that a government employee with a protected property right to continued employment was entitled to a pretermination hearing, at which the employee had to receive "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495. Section 22–10–17 provides for adequate pretermination procedure by requiring that the employee receive notice of an intent to recommend discharge, as well as a hearing at which the school board must prove by a preponderance of the evidence that just cause to discharge the employee existed at the time the notice of discharge was issued. The employee has the opportunity to call, examine, and cross-examine witnesses at the hearing.

The Supreme Court has not formulated standards for due process in postdeprivation hearings, but our examination of the procedural safeguards offered Harrell persuades us that, under *Mathews,* Harrell was afforded due process. The essential elements of the adversary process, some or all of which may be required as part of the due process afforded an individual when the government deprives him of life, liberty, or property through the action of a state agency, are:

(1) adequate notice of the charges or basis for government action; (2) a neutral decision-maker; (3) an opportunity to make an oral presentation to the decision-maker; (4) an opportunity to present evidence or witnesses to the decision-maker; (5) a chance to confront and cross-examine witnesses or evidence to be used against the individual; (6) the right to have an attorney present the individual's case to the decision-maker; (7) a decision based on the record with a statement of reasons for the decision.

2 Rotunda & Nowak, *supra,* § 17.8, at 644–45; *see also* 2 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.5, at 47 (3d ed. 1994) (listing procedural safeguards provided in judicial hearing).

Harrell received all of these procedural safeguards, as provided by Section 22–10–17.1, at the evidentiary hearing before the arbitrator. Section 22–10–17.1 requires that

the arbitrator give the employee written notice of the date of the hearing; each party may be represented by counsel at the hearing; the parties have an opportunity for discovery by deposition and production of documents; the parties have an opportunity to call, examine, and cross-examine witnesses; an official record is made of the hearing; and the arbitrator must render a written decision containing findings of fact and conclusions of law. Subsections 22–10–17.1(A), (F), (G), (I), (J), (K).

█ Harrell's argument that due process requires either a judge or an attorney to sit as arbitrator is not persuasive. Due process requires an impartial decision-maker, not a decision-maker with legal training. *See* 2 Davis & Pierce, *supra*, § 9.8, at 67 ("Due process requires a neutral, or unbiased, adjudicatory decisionmaker."); 4 Jacob A. Stein et al., *Administrative Law* § 32.01[2][b] (1993) ("[T]he essence of the legal process, whether it be adjudicatory or administrative, is a fair trial by an unbiased trier of the facts."). Section 22–10–17.1 provides adequate safeguards to ensure the neutrality of the decisionmaker. Pursuant to the statute, the arbitrator is either selected by agreement of the school board and the employee or, failing such agreement, by the presiding judge in the judicial district in which the school is located. Subsection 22–10–17.1(B). The statute further provides in Subsection (C):

A qualified independent arbitrator shall be appointed who is versed in employment practices and school procedures. No person shall be appointed to serve as the independent arbitrator who has any direct or indirect financial interest in the outcome of the proceeding, has any relationship to any party in the proceeding, is employed by the local school board or governing authority or is a member of or employed by any professional organization of which the certified school employee is a member.

This statutory scheme provides adequate guarantees that an independent, unbiased decisionmaker will be selected and thus comports with the requirements of due process.

Harrell's contention that a hearing that does not use the Rules of Civil Procedure and the Rules of Evidence violates due process is also without merit. The Supreme Court has recognized that judicial and administrative tribunals have different functions, and that these differences

preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts. Thus, ... administrative agencies[ ] "should not be too narrowly constrained by technical rules as to the admissibility of proof," should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.

*FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 142–43, 60 S.Ct. 437, 441, 84 L.Ed. 656 (1940) (citation and footnote omitted) (quoting *Interstate Commerce Comm'n v. Baird*, 194 U.S. 25, 44, 24 S.Ct. 563, 568–69, 48 L.Ed. 860 (1904)).

█ We hold that the procedures used in judicial tribunals need not be used in compulsory arbitration, so long as the arbitration procedures are sufficient to guarantee a fair proceeding. *See Ferguson–Steere Motor Co. v. State Corp. Comm'n*, 63 N.M. 137, 143, 314 P.2d 894, 898 (1957) ("Hearings before administrative bodies need not be conducted generally with the formality of court hearings or trial, but the procedure before such bodies must be consistent with the essentials of a fair trial.").

The compulsory arbitration statute provides in Subsection 22–10–17.1(I):

The rules of civil procedure shall not apply to the hearing, but it shall be conducted so that both contentions and responses are amply and fairly presented. To this end, the independent arbitrator shall permit either party to call and examine witnesses, cross-examine witnesses and introduce exhibits. The technical rules of evidence shall not apply, but, in ruling on the admissibility of evidence, the independent arbitrator may require reasonable substantiation of statements or records tendered, the accuracy or truth of which is in reasonable doubt.

The statute is designed to enhance the ability of litigants to be heard and present a defense. The inapplicability of rules of procedure and rules of evidence in agency adjudications, and here in compulsory arbitration, exists "not to restrict the discovery and presentation of evidence but to facilitate it." *Redman v. Board of Regents,* 102 N.M. 234, 238, 693 P.2d 1266, 1270 (Ct.App.1984), *cert. denied,* 102 N.M. 225, 693 P.2d 591 (1985). The arbitrator is not restricted by procedures and evidentiary rules designed to govern decisionmaking by juries, which are "premised on the belief that lay jurors are likely to misuse large categories of relevant evidence if they become aware of that evidence." 2 Davis & Pierce, *supra,* § 10.1, at 118. As a person with specialized expertise in the field of employment practice and school procedure, *see* § 22–10–17.1(C), the arbitrator is capable of assessing the reliability of evidence presented in adjudications concerning the existence of "just cause" to discharge a school employee. *See* 2 Davis & Pierce, *supra,* § 10.1, at 118. The statute requires the arbitrator to permit the discovery and introduction of relevant evidence necessary for an ample and fair presentation of all contentions and responses. *See* § 22–10–17.1(I).

### B. *Right of Access to Courts*

 Harrell argues that Section 22–10–17.1 unconstitutionally forecloses meaningful access to our state courts by not providing for de novo review by a district court following an adverse arbitration award. The right of access to the courts is one aspect of the right to petition the government for redress of grievances, as guaranteed by the First Amendment to the U.S. Constitution, and also is protected by the provisions protecting due process of law, as set out in the Fourteenth Amendment to the U.S. Constitution and in Article II, Section 18, of the New Mexico Constitution. *Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 696, 763 P.2d 1153, 1161 (1988); *Jiron v. Mahlab,* 99 N.M. 425, 426, 659 P.2d 311, 312 (1983); *see also Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (holding that Constitution requires " 'an *opportunity* ... granted at a meaningful time and a meaningful manner' ... 'for [a] hearing appropriate to the nature of the case' ") (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) and *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)).

 A person's right of access to the courts may be satisfied by an evidentiary hearing which comports with the minimum requirements of due process. *See Ortwein v. Shwab,* 410 U.S. 656, 659–60, 93 S.Ct. 1172, 1174–75, 35 L.Ed.2d 572 (1973) (per curiam) (suggesting that alternative to judicial remedy, such as administrative hearing, may satisfy right of access). We therefore hold that Harrell's right of access to the courts was not denied by Section 22–10–17.1. Pursuant to that statute, Harrell had a full evidentiary hearing before an alternative forum—the arbitrator—that allowed him an opportunity to obtain redress of his grievances. Moreover, under our holding in Part IV *infra,* a litigant who finds unsatisfactory an arbitrator's award under Section 22–10–17.1 has the right to access the judicial branch of government to secure a determination whether the award is arbitrary, unlawful, unreasonable, capricious, or not supported by substantial evidence. The statutory scheme, as modified by this opinion, provides litigants with meaningful access to the courts. *See Textile Workers Pension Fund v. Standard Dye & Finishing Co.,* 725 F.2d 843, 855 (2d Cir.) (where party in compulsory, binding arbitration "may come to the district court to enforce, vacate or modify an arbitrator's award, [the party] is not denied meaningful access to the courts"), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984); *State Farm Mut. Auto. Ins. Co. v. Broadnax,* 827 P.2d 531, 537 (Colo.1992) (where party in compulsory, binding arbitration has right to judicial review of arbitration award under Uniform Arbitration Act standards, party is not denied right of access to courts).

### C. *Right to Jury Trial*

 Harrell contends that he has the right to a jury trial against the Board for breach of his employment contract, based on the guarantee in Article II, Section 12, of the

New Mexico Constitution: "The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate." A litigant has the right to a jury trial in civil cases if "the right existed either at common law or by statute at the time of the adoption of our constitution." *State ex rel. Human Servs. Dep't v. Aguirre,* 110 N.M. 528, 529, 797 P.2d 317, 318 (Ct.App.1990); *see also State ex rel. Bliss v. Greenwood,* 63 N.M. 156, 161, 315 P.2d 223, 226 (1957). Harrell claims that he has the right to a jury trial because, when the constitution was adopted in 1912, the right to jury trial existed in contract cases. The Board responds that in 1912 discharged public employees had no legally cognizable contract right to enforce, because public employment at that time was considered a privilege, not a right.

States are not required by the United States Constitution to provide jury trials in civil cases. *Minneapolis & St. L. R.R. v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 596–97, 60 L.Ed. 961 (1916); *see also* 2 Rotunda & Nowak, *supra,* § 14.2, at 347–49 (noting that Supreme Court has never held Seventh Amendment right to jury trial applicable to states). However, we find Supreme Court decisions interpreting the Seventh Amendment relevant to our discussion of Harrell's right to a jury trial under the New Mexico Constitution. "Although the Seventh Amendment applies only to actions in the federal courts," the Seventh Amendment, like our state constitutional provision, "merely 'preserves' the common law right to jury trial and does not create a new or broader right." *McHugh v. Santa Monica Rent Control Bd.,* 49 Cal.3d 348, 261 Cal.Rptr. 318, 777 P.2d 91, 113 n. 54 (Cal.1989).

The Seventh Amendment provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." The Supreme Court interprets "suits at common law" to refer to "'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26

(1989) (quoting *Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 447, 7 L.Ed. 732 (1830)). Thus, federal courts examine not only whether the cause of action existed at the time the Seventh Amendment was ratified, but also whether the remedy sought was legal or equitable in nature. *E.g., Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835–36, 95 L.Ed.2d 365 (1987).

In *National Labor Relations Board v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), the Supreme Court held that the Seventh Amendment did not apply in an administrative adjudication before the National Labor Relations Board on the question whether an employee had been wrongfully discharged for his union activities. The employer argued that an award of back pay is equivalent to a money judgment and that he was therefore entitled to a jury trial on the back pay claim. The Supreme Court rejected this argument, stating:

> The Amendment ... has no application to cases where recovery of money damages is an incident to equitable relief even though damages might have been recovered in an action at law. It does not apply where the proceeding is not in the nature of a suit at common law.
>
> The instant case is not a suit at common law or in the nature of such a suit. The proceeding is one unknown to the common law. It is a statutory proceeding. Reinstatement of the employee and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement. The contention under the Seventh Amendment is without merit.

*Id.* at 48–49, 57 S.Ct. at 629 (citations omitted).

Harrell's action against the Board is likewise a statutory proceeding unknown at common law. When New Mexico adopted its constitution, there was no civil action under which public school employees aggrieved by their discharge from employment might seek relief from their employers. New Mexico public school administrators had no right to continued employment until 1967, when the right to a hearing upon discharge and proce-

dures for appeal were granted school administrators by statute. *See* NMSA 1953, Repl. Vol. 11, Pt. 1 (1968), §§ 77–8–16 and –17. Relief for wrongful discharge under the current statute contemplates reinstatement and back pay, as did the statute in *Jones. See* NMSA 1978, Section 22–10–18 (Repl. Pamp.1993). Because the cause of action prosecuted here did not exist at common law at the time our constitution was adopted, and because relief under the statute is essentially equitable, Harrell had no right to a jury trial.

Even if we interpreted Harrell's claim as stating a legal claim cognizable at common law at the time our constitution was adopted, it nonetheless would be permissible for the legislature to assign resolution of the claim to an adjudicative body that does not use a jury as factfinder. *See Granfinanciera,* 492 U.S. at 42, 109 S.Ct. at 2790. In *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), the Supreme Court considered a claim that a monetary penalty by an administrative agency for violation of federal health and safety standards was in essence a suit for a money judgment. The appellants contended that, because a suit for a money judgment was a suit at common law, the Seventh Amendment prevented assignment of factfinding functions on the issue to an administrative agency. The Supreme Court rejected this contention, stating that

> when Congress creates new statutory "public rights," it may assign their adjudication to an administrative agency with which a jury trial would be incompatible, without violating the Seventh Amendment's injunction that jury trial is to be "preserved" in "suits at common law." ... This is the case even if the Seventh Amendment would have required a jury where the adjudication of those rights is assigned to a federal court of law instead of an administrative agency.

*Id.* at 455, 97 S.Ct. at 1269. Thus, Congress may assign disputes involving "public rights"—including, at a minimum, any suit brought by an individual against the Government pursuant to otherwise valid legislation—to a tribunal that does not use a jury as a factfinder without violating the Seventh Amendment. *See Granfinanciera,* 492 U.S. at 42 n. 4, 109 S.Ct. at 2790 n. 4.

The right of a certified school employee to continued employment is now established by Sections 22–10–17 (creating a "just cause" standard for dismissal and setting procedures for discharge hearing), 22–10–17.1 (setting procedures for appeal of discharge decision by school board), and 22–10–18 (establishing relief for school employee upon reversal of discharge action). A person seeking a remedy pursuant to these statutes against the Board—an agency of the state—is seeking vindication of a public right. These laws are designed to protect school employees from wrongful discharge and to allow school boards to properly manage their personnel. They also further the public policy of encouraging qualified and talented individuals to seek employment with the public schools. Because a school administrator's right to continued employment is a public right created by statute, the legislature can constitutionally prescribe the methods for adjudicating a dispute over termination of that right. *Cf. Wylie Corp. v. Mowrer,* 104 N.M. 751, 753, 726 P.2d 1381, 1383 (1986) (relying on public policy considerations in affirming validity of workers' compensation administration adjudications). We therefore find no constitutional infirmity in the lack of provision for a jury trial in Section 22–10–17.1.

## D. Delegation of Judicial Power

Harrell argues that Section 22–10–17.1 violates Article III, Section 1, and Article VI, Section 1, of the New Mexico Constitution because it is an unconstitutional delegation of judicial power. Article III, Section 1, is our state's constitutional provision for separation of powers:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted.

N.M. Const. art. III, § 1 (Repl.Pamp.1992). The judicial power of the state is vested in the various courts listed in Article VI, Section 1, of the constitution.

Harrell contends that the legislature has unconstitutionally attempted to limit the power and authority of the judiciary by vesting an arbitrator with sole authority to determine all issues of fact and law related to a school employee's discharge and restricting judicial review of the arbitrator's decision to issues regarding fraud or corruption of the arbitral process.

The separation of powers principle is expressed implicitly in the United States Constitution and explicitly in nearly all state constitutions, including the New Mexico Constitution in Article III, Section 1. *See generally* Albert E. Utton, *Constitutional Limitations on the Exercise of Judicial Functions by Administrative Agencies,* 7 Nat.Resources J. 599, 600–01 (1967). The theory of separation of powers is derived from concerns that concentrating judicial, legislative, and executive powers in a person or group of persons would create a system with an inherent tendency toward tyrannical actions. 1 Rotunda & Nowak, *supra,* § 3.12, at 351–52; 1 Davis & Pierce, *supra,* § 2.1, at 34; *see also The Federalist* No. 47 (James Madison) ("The accumulation of all powers, legislative, executive, and judiciary, in the same hands ... may justly be pronounced the very definition of tyranny."). The New Mexico and federal constitutions accordingly provide for the division of government into three distinct branches, each responsible for performing a different function—legislation, execution of the laws, and adjudication. *See* N.M. Const. arts. IV, V, VI (Repl.Pamp.1992).

It is unrealistic, however, to assume that the functions performed by the three branches do not—and should not—blend and overlap. The United States Supreme Court has discussed the overlapping of powers contemplated by the Federal Constitution:

> [T]he constitution by no means contemplates total separation of each of these three essential branches of Government. ... The men who met in Philadelphia in the summer of 1787 were practical statesmen, experienced in politics, who viewed the principle of separation of powers as a vital check against tyranny. But they likewise saw that a hermetic sealing off of the three branches of Government from one another would preclude the establishment of a Nation capable of governing itself effectively.

*Buckley v. Valeo,* 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976) (per curiam); *see also* Felix Frankfurter, *The Public and Government* 78 (1930) ("Enforcement of a rigid conception of separation of powers would make modern government impossible.").

■ The separation of powers provision in Article III, Section 1, thus should not be considered as an absolute bar to performance by one of the three branches of some functions performed by the other two branches or to delegation of some functions of one of the branches to some entity. *See* 1 Stein et al., *supra,* § 3.03[6] ("It is well recognized that Congress may delegate judicial, that is, adjudicatory functions to administrative agencies."); *see generally* 1 Davis & Pierce, *supra,* § 2.8, at 90–91 (discussing policy reasons for permitting delegation of adjudicatory functions). The Supreme Court has upheld statutory delegations of adjudicatory power to agencies on numerous occasions. *See, e.g., Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 400, 60 S.Ct. 907, 915–16, 84 L.Ed. 1263 (1940) ("Nor is there an invalid delegation of judicial power. To hold that there was would be to turn back the clock on at least a half century of administrative law."). Similarly, our legislature has empowered certain administrative agencies to adjudicate cases, and this Court has found such delegations to pass constitutional muster. *See, e.g., Wylie Corp.,* 104 N.M. at 753, 726 P.2d at 1383 (holding that "creation of a workmen's compensation administration and vesting in it the determination of controversies thereunder, is a valid exercise of legislative power.").

■ The separation of powers doctrine does not prohibit every exercise of judicial functions by individuals or groups outside the judiciary. As one commentator has noted, "the real thrust of the separation of powers philosophy is that each department of gov-

ernment must be kept free from the control or coercive influence of the other departments." 1 Frank E. Cooper, *State Administrative Law* 16 (1965) (footnote omitted).

The doctrine of separation of powers must therefore be viewed not as an end in itself, but as a general principle intended to be applied so as to maintain the balance between the three branches of government, preserve their respective independence and integrity, and prevent the concentration of *unchecked* power in the hands of any one branch.

*David v. Vesta Co.,* 45 N.J. 301, 212 A.2d 345, 358–59 (1965) (footnote omitted). The interests protected by maintaining separation of powers can best be furthered, we believe, not by requiring a total separation of functions among the branches but by ensuring that adequate checks exist to keep each branch free from the control or coercive influence of the other branches.

The judiciary thus must maintain the power of check over the exercise of judicial functions by quasi-judicial tribunals in order that those adjudications will not violate our constitution. The principle of check requires that the essential attributes of judicial power, *vis-a-vis* other governmental branches and agencies, remain in the courts. *See McHugh,* 777 P.2d at 107.

■ Our Court of Appeals has defined the "essence of judicial power" as "the final authority to render and enforce a judgment." *Otero v. Zouhar,* 102 N.M. 493, 502, 697 P.2d 493, 502 (Ct.App.1984), *aff'd in part and rev'd in part on other grounds,* 102 N.M. 482 (1985); *see also Firelock Inc. v. District Court,* 776 P.2d 1090, 1094 (Colo.1989) (final authority to render and enforce judgment or remedy is essence of judicial power); *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, 64 (same), *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). Judicial review of the arbitrator's decision allows the court, rather than the arbitrator, to be the final authority rendering and enforcing the judgment, thus retaining essential judicial power within the judiciary. We hold that the "principle of check" requires that courts have an opportunity to review decisions of arbitrators in statutorily compelled arbitrations. *See, e.g., McHugh,* 777 P.2d at 106 ("principle of check" requires that courts retain power to make enforceable, binding judgments through review of agency determinations); *Kentucky Comm'n on Human Rights v. Fraser,* 625 S.W.2d 852, 855 (Ky.1981) (administrative adjudications are not unconstitutional usurpation of judicial power where judicial review is available); *David,* 212 A.2d at 359 (administrative adjudications must be subjected to judicial scrutiny for purposes of separation of powers to prevent unchecked power); *see also Peick v. Pension Benefit Guar. Corp.,* 724 F.2d 1247, 1277 (7th Cir.1983) (compulsory arbitration constitutional where it is "merely the first step" in dispute resolution with subsequent court review), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984); *Republic Indus., Inc. v. Teamsters Joint Council No. 83,* 718 F.2d 628, 640 (4th Cir.1983) (legislatures may mandate arbitration "so long as fair procedures are provided and ultimate judicial review is available"), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); *Bayscene Resident Negotiators v. Bayscene Mobilehome Park,* 15 Cal.App.4th 119, 18 Cal.Rptr.2d 626, 634 (Ct.1993) (constitutionality of statutorily mandated arbitration "depends upon whether meaningful judicial review of the arbitrator's decision is provided"). We use due-process analysis to determine whether the judicial review provided in the compulsory arbitration statute is adequate to reserve ultimate judicial power to the judiciary.

## IV. THE CONSTITUTIONALITY OF THE LIMITED REVIEW UNDER SUBSECTION 22–10–17.1(M)

■ Having upheld the constitutionality of compulsory arbitration in general, we turn now to the specific issue of whether a litigant's right to a fair hearing is adequately protected by the limited judicial review provided in Subsection 22–10–17.1(M): "The decision of the independent arbitrator shall be final and binding on both parties and shall be nonappealable except where the decision was procured by corruption, fraud, deception or collusion, in which case it may be appealed to the court of appeals . . . ." Arbitrary or ca-

pricious action is not a ground for appeal under the statute, nor can a decision be reviewed to determine if it is legally sound and supported by substantial evidence.

The Illinois Supreme Court has said:

"As a general rule, delegation to administrators or agencies of the quasi-judicial power to adjudicate rights or to revoke privileges such as licenses is not invalid so long as there is an opportunity for judicial review of the administrative action. Such judicial review normally permits an aggrieved party to contest the fairness of the procedure used, the constitutionality of the substance of the regulatory statute and implementing rules and regulations, the correctness of the administrator's interpretation of the statute under which he operates, and whether or not his decision was arbitrary. In short, if the judiciary is given an adequate opportunity to review what has been done, the principle of separation of powers—or due process of law, if you will—is generally satisfied."

*City of Waukegan v. Pollution Control Bd.,* 57 Ill.2d 170, 311 N.E.2d 146, 152 (1974) (quoting George D. Braden & Rubin G. Cohn, *Illinois Constitution: An Annotated and Comparative Analysis* 104–05 (1969)). Thus, review of an administrative adjudication must be sufficient to allow the judiciary an adequate opportunity to evaluate whether the litigant received a fair hearing and whether the law was correctly applied. The New York Court of Appeals has similarly ruled that, in statutorily compelled arbitrations, "Due process of law requires … that the [decision of] the arbitrator under the power conferred by statute have a basis not only in his good faith, but in law and the record before him." *Mount St. Mary's,* 311 N.Y.S.2d at 873, 260 N.E.2d at 515 (citations omitted).

 We agree that due process, together with separation of powers considerations, requires that parties to statutorily mandated arbitration be offered meaningful review of the arbitrator's decision. In order for review of the arbitrator's decision to be meaningful, the court must determine whether the litigant received a fair hearing before an impartial tribunal, whether the decision is supported by substantial evidence, and whether the decision is in accordance with law. The provision in Subsection 22–10–17.1(M) limiting judicial review of the arbitrator's decision to cases "where the decision was procured by corruption, fraud, deception or collusion" does not permit meaningful review of the arbitrator's decision by the court. We therefore strike this provision as a violation of due process and as an unconstitutional delegation of judicial power. *See* 1986 N.M.Laws, ch. 33, § 35 (unconstitutional parts of § 22–10–17.1 may be severed from remainder of statute).

 The provision in Section 22–10–17.1 permitting review of the arbitrator's decision remains intact; we only strike the limitations on review as inadequate. The question remains, what standard of review is to be applied to the arbitrator's decision under Section 22–10–17.1, now that the provision in Subsection 22–10–17.1(M) delimiting the scope of review has been severed from the remainder of the statute? The scope of review constitutionally required for compulsory arbitration is the review required for administrative adjudications. In *Regents of the University of New Mexico v. Hughes,* 114 N.M. 304, 838 P.2d 458 (1992), we held that "*any* judicial review of administrative action, statutory or otherwise, requires a determination whether the administrative decision is arbitrary, unlawful, unreasonable, capricious, or not based on substantial evidence." *Id.* at 309, 838 P.2d at 463; *see also State ex rel. Harris v. Annuity & Pension Bd.,* 87 Wis.2d 646, 275 N.W.2d 668, 671 (1979) (common law review of administrative action includes whether board proceeded under correct theory of law, whether action was arbitrary or unreasonable, whether action was supported by evidence). We note that this scope of review is essentially the same as the review of the State Board's decisions required by this Court in *McCormick,* 58 N.M. at 661, 274 P.2d at 307, and statutorily mandated by the legislature in 1973 as compiled in NMSA 1953, Section 77–8–17, and NMSA 1978, Section 22–10–20. The district court therefore may review the arbitrator's decision pursuant to Section 22–10–17.1 using the standard of review appropriate to an administrative adju-

dication. *See Llano, Inc. v. Southern Union Gas Co.,* 75 N.M. 7, 11–12, 399 P.2d 646, 649 (1964) (discussing scope of review of decisions of administrative agencies).

Harrell urges us to adopt a de novo standard of review for both the administrator's factual findings and his legal conclusions. We decline to do so. Review of factual findings for substantial evidence (on the whole record) protects the interests of the litigants while supporting the purposes of the compulsory arbitration provision—to provide an inexpensive and efficient method for resolution of disputes. "To subject factual findings made by arbitrators under [the compulsory arbitration statute] to de novo review by the court would, in many cases, make those proceedings merely way stations to the courts, and would thereby create the very risks that the compulsory arbitration provision was designed to avoid." *Chmielewski v. Aetna Casualty & Sur. Co.,* 218 Conn. 646, 591 A.2d 101, 109 (1991). We hold that due process is satisfied by de novo review of questions of law and substantial-evidence review of findings of fact. *See id.* 591 A.2d at 110 (applying *Mathews v. Eldridge* factors and concluding that "no due process violation is involved in subjecting factual findings to a substantial evidence test" under a statute requiring arbitration of disputes).

## V. CONCLUSION

To summarize our rulings, we hold that, except insofar as Subsection 22–10–17.1(M) curtails judicial review of the arbitrator's decision from what would otherwise be available on review of an administrative adjudication, the provisions in Section 22–10–17.1 mandating compulsory arbitration of grievances of discharged school employees do not violate an employee's right to procedural due process, right of access to the courts, or right to jury trial; nor do they unconstitutionally delegate judicial power to a nonjudicial tribunal. However, the statute violates due process and the constitutional allocation of judicial power to the judiciary insofar as it unduly restricts judicial review of the arbitrator's decision. The provision in Subsection 22–10–17.1(M) providing for limited judicial review of the arbitrator's decision is therefore sev-

ered from the remainder of the statute. On remand, the district court may entertain Harrell's position, should he choose to assert it, that the arbitrator's award is arbitrary, unlawful, unreasonable, capricious, or not based on substantial evidence on the whole record.

The district court's order confirming the arbitration award is reversed, and the cause is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

BACA and FROST, JJ., concur.