The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date: March 15, 2021**

**NO. S-1-SC-37231**

**SUSAN L. SIEBERT,**

     Plaintiff-Appellee,

v.

**REBECCA C. OKUN, M.D.,
and WOMEN'S SPECIALISTS
OF NEW MEXICO, LTD.,**

     Defendants-Appellants.

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS
Victor S. Lopez, District Judge**

Hinkle Shanor, LLP
William P. Slattery
Dana Simmons Hardy
Santa Fe, NM

Dickinson Wright, PLLC
Bennett Evan Cooper
Phoenix, AZ

Lorenz Law
Alice Tomlinson Lorenz
Albuquerque, NM

for Appellants

Curtis & Co.
Lisa Curtis
Laura R. Callanan
Albuquerque, NM

The Law Office of Amalia S. Lucero, LLC
Amalia J. Skogen Lucero
Placitas, NM

for Appellee

John W. Anderson, Attorney at Law P.C.
John William Anderson
Albuquerque, NM

Shook, Hardy & Bacon, LLP
Mark A. Behrens
Cary Silverman
Washington, D.C.

for Amici Curiae New Mexico Medical Society and American Medical Association

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward R. Ricco
Albuquerque, NM

for Amicus Curiae New Mexico Hospital Association

University of New Mexico School of Law
Michael B. Browde
David J. Stout
Albuquerque, NM

American Association for Justice
Elsie Sanguinetti, President
Jeffrey White, Senior Associate General Counsel
Washington, DC

for Amici Curiae New Mexico Trial Lawyers Association
and American Association for Justice

**VIGIL, Justice.**

{1}     This case requires us to consider whether the cap on all damages other than medical care and punitive damages under the Medical Malpractice Act (MMA), NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2015), violates the right to trial by jury guaranteed by Article II, Section 12 of the New Mexico Constitution. Plaintiff Susan L. Siebert successfully sued her doctor, Rebecca C. Okun, M.D., and Women's Specialists of New Mexico, Ltd. (WSNM) for medical malpractice under the MMA. Following the return of the jury's verdict, Defendants Dr. Okun and WSNM moved to reduce the jury award of $2,600,000 to conform with the $600,000 cap on all nonmedical and nonpunitive damages in MMA actions. *See* NMSA 1978, § 41-5-6(A) (1992).

{2}     The district court denied Defendants' motion, concluding that the MMA nonmedical, nonpunitive damages cap infringed the state constitutional right to a trial by jury. In doing so, the district court ruled in direct opposition to the Court of Appeals' holding in *Salopek v. Friedman*, 2013-NMCA-087, ¶ 58, 308 P.3d 139. In addition, the district court suggested without deciding that the cap might implicate the equal protection, substantive due process, and separation of powers provisions of the New Mexico Constitution. N.M. Const. art. II, § 18; N.M. Const. art. III, § 1.

{3}     We review this case upon acceptance of certification from the Court of Appeals. *Siebert v. Okun*, A-1-CA-36067, Order of Certification to the New Mexico Supreme Court (Sept. 4, 2018); *Siebert v. Okun*, S-1-SC-37231, Order (Sept. 24, 2018). As we explain herein, we hold that the MMA nonmedical, nonpunitive damages cap does not violate Article II, Section 12, and we reverse the district court's denial of Defendants' motion to conform the judgment in accordance with the statutory cap. *See* § 41-5-6(A).

## I.     BACKGROUND

{4}     Plaintiff suffered injuries due to perforations in her uterus and intestine after a hysteroscopy performed by Dr. Okun, an employee of WSNM. Subsequently, Plaintiff brought suit against Defendants. Because Defendants were "qualified" health care providers as defined by the MMA, NMSA 1978, § 41-5-5(A) (1992), the provisions of the MMA applied to Plaintiff's suit for medical malpractice.

{5}     The MMA statutory scheme is a quid pro quo, whereby qualified health care providers are afforded certain legal protections only if they take financial action in anticipation of medical negligence lawsuits. Specifically, a qualified health care provider under the MMA must pay an annual surcharge into the statutorily-created patient's compensation fund and either provide proof of professional liability insurance of at least $200,000 per occurrence or, for an individual health care

2

provider, have a continuous deposit of $600,000 with the state superintendent of insurance. NMSA 1978, §§ 41-5-3(A) (1977), -5(A), -25 (1997). In exchange for these financial contributions and assurances, the MMA provides qualified health care providers with various benefits. *See generally Baker v. Hedstrom*, 2013-NMSC-043, ¶ 18, 309 P.3d 1047 (reviewing the benefits provided by the MMA to qualified health care providers). Among those benefits, the MMA caps nonmedical, nonpunitive damages awards at $600,000 and limits the qualified health care provider's personal liability to $200,000. Section 41-5-6; NMSA 1978, § 41-5-7(E) (1992). Any remaining amount of the judgment exceeding the personal liability cap is paid out of the patient's compensation fund. Sections 41-5-7(E), -25(G). Most pertinent to this case is the cap on an award of nonmedical, nonpunitive damages under Section 41-5-6(A).

{6}     Section 41-5-6(A) provides that, "[e]xcept for punitive damages and medical care and related benefits, the aggregate dollar amount recoverable by all persons for or arising from any injury or death to a patient as a result of malpractice shall not exceed six hundred thousand dollars ($600,000) per occurrence." The amount recoverable for a malpractice claim under the MMA does not include awards for future medical expenses, but if the jury finds that a successful plaintiff is in need of future medical care, that plaintiff may receive payment for reasonable future medical

3

expenses as they are incurred. Sections 41-5-6(C), -7(A)-(B), -(D). Awards for those future medical expenses are not capped. Section 41-5-7(C). In other words, the jury in an MMA action determines whether a plaintiff is entitled to future damages but does not award a specific amount following the trial. The amount awarded for future medical care is established in subsequent evidentiary hearings. Section 41-5-7.

{7}     The jury in this case awarded Plaintiff $2,600,000 in total damages. The damages award was not disaggregated into various categories of damages. This is because the district court failed to give the required special interrogatory asking the jury to state the amount of damages it awarded for past medical care and benefits. UJI 13-1126 NMRA. In addition, the jury was incorrectly instructed to award damages for Plaintiff's future medical care in violation of Section 41-5-7. The jury was not given the required special interrogatory asking if Plaintiff was in need of future medical care, UJI 13-1125 NMRA. For these reasons, we are not certain how much of the jury's verdict was intended to compensate for past medical care and nonmedical injuries, and we do not know whether any amount of the jury's award was intended to compensate for future medical care. However, the jury was instructed that Plaintiff's medical expenses totaled $935,916.15. We therefore accept that this amount of the jury's verdict was intended to compensate Plaintiff for her existing medical expenses by the time of the trial. The jury was also instructed that

4

it could award compensation for various nonmedical injuries, such as pain and suffering, loss of household services, and loss of enjoyment of life, among other injuries. The jury was not instructed on punitive damages.

{8}     The district court entered judgment against Defendants for the total amount of the jury's verdict. Defendants subsequently moved to amend the judgment to conform to the damages cap of Section 41-5-6(A). Defendants argued that the total award should be reduced to $1,535,916.15, representing the stipulated amount of Plaintiff's existing medical expenses ($935,916.15) plus $600,000 for Plaintiff's capped nonmedical damages. In response, Plaintiff argued that the MMA nonmedical, nonpunitive damages cap was unconstitutional, specifically violating the right to a jury trial as guaranteed by Article II, Section 12, the separation of powers provision of Article III, Section 1, and the equal protection and substantive due process clauses of Article II, Section 18.

{9}     After an evidentiary hearing on the constitutional issues, the district court issued its memorandum opinion and order, which concluded that Article II, Section 12 was "clearly implicated and dispositive" and that the MMA nonmedical, nonpunitive damages cap violated Plaintiff's right to a jury trial. The district court stated that the constitutional separation of powers, equal protection, and due process provisions might also be implicated but declined to decide those issues.

5

{10} Defendants appealed to the Court of Appeals. Because the Court of Appeals had already addressed the issues presented by this case in *Salopek*, 2013-NMCA-087, it certified the case to this Court pursuant to NMSA 1978, Section 34-5-14(C) (1972), and Rule 12-606 NMRA. *Siebert*, A-1-CA-36067, Order (Sept. 4, 2018).

## II.    DISCUSSION

{11} In its certification order, the Court of Appeals identified the following significant questions of law: (1) whether the district court erred by concluding that the MMA nonmedical, nonpunitive damages cap violates the right to a trial by jury; (2) whether the district court erred in suggesting that the MMA nonmedical, nonpunitive damages cap violates the separation of powers provision; and (3) whether the district court erred in suggesting that the MMA nonmedical, nonpunitive damages cap violates equal protection and substantive due process. *Id.* We accepted certification. *Siebert*, S-1-SC-37231, Order (Sept. 24, 2018). With this opinion, we answer the first question posed by the Court of Appeals—whether the MMA nonmedical, nonpunitive damages cap violates the state constitutional right to trial by jury. We do not address the remaining certified questions because the district court merely suggested that the separation of powers, substantive due process, and equal protection provisions of the New Mexico Constitution "may also be implicated." The district court did not definitively rule that the cap violated any

6

constitutional guarantees aside from the right to trial by jury. For that reason, analysis of any other constitutional issues is not necessary to the disposition of the case before us. We therefore decline to answer the second and third questions posed by the Court of Appeals. *See Schlieter v. Carlos*, 1989-NMSC-037, ¶ 13, 108 N.M. 507, 775 P.2d 709 ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so. We have repeatedly declined to decide constitutional questions unless necessary to the disposition of the case."). For the reasons that follow, we hold that the MMA nonmedical, nonpunitive damages cap does not violate Article II, Section 12.

{12}     Constitutional challenges to a statute are reviewed de novo. *Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 11, 306 P.3d 457. When reviewing a statute under a constitutional challenge, a "strong presumption in favor of constitutional validity . . . attaches to legislative enactments." *Otto v. Buck*, 1956-NMSC-040, ¶ 16, 61 N.M. 123, 295 P.2d 1028.

{13}     The New Mexico Constitution provides that "[t]he right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate." N.M. Const. art. II, § 12. This right pertains to civil causes of action that were triable by jury at the

time the New Mexico Constitution was adopted and took effect.[1] *State ex rel. Bliss v. Greenwood*, 1957-NMSC-071, ¶ 15, 63 N.M. 156, 315 P.2d 223 ("[I]n that class of cases where the right to a trial by jury existed prior to the Constitution, it cannot be denied by the legislature.").

{14}    Defendants bring this appeal, arguing that Plaintiff's right to trial by jury was not violated for two reasons. First, relying on the Court of Appeals' holding in *Salopek*, 2013-NMCA-087, ¶¶ 49-58, Defendants claim that the jury right does not attach to medical malpractice cases under the MMA because the MMA is a statutory cause of action that did not exist at the time the New Mexico Constitution came into effect. Second, Defendants argue that the MMA nonmedical, nonpunitive damages cap does not even implicate the right to a jury trial because the cap merely gives legal effect to the jury's damages award; the cap does not invade the jury's role as fact-finder. Put another way, regardless of whether the right to a jury trial attaches

---

[1]This case implicates only the state constitutional right to a jury trial in civil cases as the analogous federal right articulated in the Seventh Amendment applies only to "Court[s] of the United States." Despite this distinction, we consider federal precedent relevant to our analysis of the state right to a jury trial in civil cases. *Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 1994-NMSC-096, ¶ 34, 118 N.M. 470, 882 P.2d 511. This is because both constitutional provisions preserve the right to jury trial as it existed in the jurisdiction at the time each constitution was adopted. *See id.* ¶¶ 33-34 (providing that both the Seventh Amendment to the United States Constitution and Article II, Section 12 of the New Mexico Constitution "preserve[] the common law right to jury trial and do[] not create a new or broader right" (internal quotation marks and citation omitted)).

8

to actions brought under the MMA, the damages cap does not violate the jury right but instead limits the scope of a plaintiff's available legal remedy.

{15} We address each argument in turn and conclude that the MMA nonmedical, nonpunitive damages cap does not violate the right to trial by jury. While we agree with the outcome in *Salopek*, in which the Court of Appeals held that the cap did not violate Article II, Section 12, we must overrule its conclusion that the constitutional jury right does not attach to MMA causes of action. To the contrary, we hold that the constitutional right to trial by jury applies in cases brought under the MMA. Though the constitutional jury right *applies* in MMA cases, we further hold that the damages cap of Section 41-5-6(A) does not *violate* the right to trial by jury because the cap does not invade the province of the jury. Rather, this statutory damages cap merely gives legal consequence to the jury's determination of the amount of the verdict.

**A. The Constitutional Right to Trial by Jury Attaches to Causes of Action Brought Under the MMA**

{16} To determine whether the right to trial by jury extends to a specific cause of action, we assess the general nature of the claim to determine whether the specific cause of action would have been tried to a jury prior to the effective date of the New Mexico Constitution. In identifying the general cause of action at issue, we "must consider whether such an action fits within that 'class of cases' in which the right

9

[to a jury trial] existed either at common law or by statute at the time" the New Mexico Constitution was adopted and took effect. *See Greenwood*, 1957-NMSC-071, ¶ 15. We have explained that to determine whether the cause of action at issue lies within the class of cases to which the jury right applied, "the relevant question is whether the *more generally described cause of action*, such as breach of contract or breach of fiduciary duty, was triable to a jury."[2] *Lisanti v. Alamo Title Ins. of Tex.*, 2002-NMSC-032, ¶ 13, 132 N.M. 750, 55 P.3d 962 (emphasis added). It is "the cause of action, not its specific manifestation, [that is] dispositive." *Id.* ¶ 14 (citing *Harrell*, 1994-NMSC-096).

{17}    When assessing the general cause of action, we must also consider whether the requested relief is legal or equitable in nature. *See Harrell*, 1994-NMSC-096, ¶¶ 35-37; *see also Granfinanciera,* 492 U.S. at 41 ("'Suits at common law' . . . refer[s] to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and

---

[2]The *Lisanti* rule is substantively similar to the analysis used by federal courts to determine which cases trigger the jury right under the Seventh Amendment. In *Granfinanciera, SA v. Nordberg*, the United States Supreme Court explained that the right to a jury trial in civil cases "applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts" at the time the United States Constitution was adopted. 492 U.S. 33, 41-42 (1989).

10

equitable remedies were administered.'" (citations omitted)). If the sought relief is solely equitable in nature, the right to jury trial does not attach. *See id.* We need not linger on this consideration because Plaintiff seeks a legal remedy in the form of monetary damages for negligence. The critical inquiry in this case is two-fold: (a) whether causes of action brought under the MMA can be "more generally described" as causes of action in common-law medical negligence, *see Lisanti*, 2002-NMSC-032, ¶ 13, and (b) whether claims of common-law medical negligence were triable to a jury at the time the New Mexico Constitution was adopted and took effect. We begin our analysis with an examination of the Court of Appeals' opinion in *Salopek*, the principal case upon which Defendants rely in bringing this appeal.

1. **A claim under the MMA can be *more generally described* as a cause of action in common-law medical negligence**

{18}    In *Salopek*, the Court of Appeals concluded that the MMA created a new statutory cause of action that was distinct from a claim of common-law medical negligence. 2013-NMCA-087, ¶ 58. In that case, the plaintiff sued his doctor for medical malpractice under the MMA. *Id.* ¶ 5. The jury found that the doctor was negligent in failing to pressurize the plaintiff's colon in order to locate a perforation and awarded the plaintiff $1,000,000 in damages. *Id.* ¶¶ 3, 5. The district court reduced the damages award to $600,000 pursuant to the damages cap of Section 41-5-6(A). *Id.* ¶ 5. On appeal, the plaintiff argued, among other things, that the cap on

11

damages violated his constitutional right to trial by jury under Article II, Section 12. *Id.* ¶¶ 49, 51. The Court of Appeals disagreed and held that the constitutional jury right did not attach in the plaintiff's case because an action for medical malpractice under the MMA was "an entirely new statutory cause of action that was not recognized under the common law." *Id.* ¶ 50.

{19} In support of this conclusion, the Court of Appeals described four ways in which it considered a claim under the MMA distinct from a common-law claim of medical negligence. *Id.* ¶¶ 53-58. First, under the MMA, a plaintiff must submit his or her claim to the statutorily-created medical review commission, which assesses the plaintiff's likelihood of success and, upon determining that the acts complained of "might constitute malpractice," provides the plaintiff assistance in obtaining "a physician qualified in the field of medicine involved" to serve as a consultant and expert witness at trial. *Id.* ¶ 54; NMSA 1978, §§ 41-5-14, -15, -20, -23 (1976). No such review of the case and conditional provision of an expert is afforded the plaintiff in a common-law medical negligence claim. *Salopek*, 2013-NMCA-087, ¶ 54.

{20} Second, the MMA provides a statute of repose requiring a plaintiff to bring a claim within three years of the act of malpractice, NMSA 1978, § 41-5-13 (1976), as opposed to the statute of limitations for common-law medical negligence claims

which permits claims to be brought "within three years from the time that the patient discovers, or with reasonable diligence should have discovered, that a claim exists." *Salopek*, 2013-NMCA-087, ¶ 55.

{21} Third, the MMA caps the defendant health care provider's personal liability at $200,000 for "all medical care and related benefit payments," § 41-5-7(E), and the MMA also created the patient's compensation fund to cover any amount that exceeds the personal liability cap. *Salopek*, 2013-NMCA-087, ¶ 56; §§ 41-5-6(D), -25. No such cap or compensation fund exists at common law, so a defendant in a common-law medical negligence case "is liable for all actual damages proximately caused." *Salopek*, 2013-NMCA-087, ¶ 56.

{22} Finally, under the MMA, a successful plaintiff found to be in need of future medical care is not awarded future medical damages at trial but is instead compensated for continuing medical care as those expenses are incurred, § 41-5-7(B), (D), and the district court maintains continuing jurisdiction to enforce payment to the plaintiff, NMSA 1978, §§ 41-5-9, -10 (1976). *Salopek*, 2013-NMCA-087, ¶ 57. In contrast, a successful plaintiff in a common-law medical negligence claim may recover only once for future medical care if the jury accounts for those expenses within its damages award. *Id.*; *see* UJI 13-1804 NMRA. In other words, under a

13

traditional common-law medical negligence lawsuit, there is no determination of future medical expenses beyond the jury's award of damages at trial.

{23} In light of these distinctions and the aim of the Legislature to create a statutory scheme for medical malpractice that would benefit patients as well as appease insurance providers, the Court of Appeals held that the MMA was sufficiently distinct from common-law medical negligence so as to constitute an entirely new statutory cause of action to which the constitutional jury right did not attach. *Salopek*, 2013-NMCA-087, ¶ 58 ("[W]here the Legislature creates a right of action pursuant to a special statutory proceeding, there is no right to a jury trial under our constitution unless the statute so provides." (brackets omitted) (internal quotation marks and citation omitted)).

{24} We disagree with the Court of Appeals' analysis and conclusion that an MMA claim is a cause of action that is distinct from common-law medical negligence. In reaching its conclusion, the *Salopek* Court relied on *procedural* distinctions between MMA and non-MMA medical negligence cases. *Id.* ¶¶ 53-58. These procedural distinctions evidence only the Legislature's intent to alter the way in which a medical negligence claim is brought against a qualified health care provider. *Id.* ¶¶ 52-53, 58. While procedural requirements dictate how a claim may be asserted, they do not affect the general substantive nature of a cause of action. Thus, heavy reliance solely

14

on the procedural differences between MMA and non-MMA claims runs counter to the principles we pronounced in *Lisanti*. Consistent with our precedent, in order to determine whether an MMA claim can be "more generally described" as a claim of medical negligence at common law, we must examine the core *substantive* elements of each type of claim. *See Lisanti*, 2002-NMSC-032, ¶ 13.

{25}    The substantive elements of a medical malpractice claim under the MMA and the substantive elements of a medical negligence claim at common law are indistinguishable. This is reflected in our jury instructions. The same jury instructions are used for MMA and non-MMA cases alike to explain "the basic elements of a medical negligence (malpractice) action." Rule Set 13 ("Uniform Jury Instructions—Civil"), Ch. 11 ("Medical Negligence") Intro. NMRA. These elements include duty, breach of that duty "by departing from the proper standard of medical practice recognized in the community[,]" and proximate causation of the plaintiff's injuries. *Diaz v. Feil*, 1994-NMCA-108, ¶ 5, 118 N.M. 385, 881 P.2d 745; *see* UJI 13-1101 (duty and breach of duty), -1116A (causation for failure to warn of potential injury arising from treatment of conditions), -1116B NMRA (causation for failure to warn of potential injury resulting from untreatment of conditions). Under both types of claims, the jury is asked to assess damages. *See* Rule Set 13, Ch. 18

15

("Damages") Intro. NMRA ("Instructions on damages follow as a matter of course in all cases wherein an issue is submitted to a jury on the recovery of damages.").

{26} There are only two slight statutory differences affecting how the jury is instructed in MMA cases and cases of common-law medical negligence, neither of which pertain to the elements a plaintiff must prove in these types of cases. We consider these differences procedural rather than substantive. First, in an MMA case, the jury is not informed of the statutory damages cap. *See* § 41-5-6(A) ("[T]he jury shall not be given any instructions dealing with th[e] limitation [on damages.]"). Second, if the jury finds a health care provider negligent in an MMA case, it must then answer whether the plaintiff is in need of future medical care and benefits as a result of the injury. *See* § 41-5-7(A). However, the jury in an MMA case is not permitted to determine "the value of future medical care and related benefits, and evidence relating to the value of future medical care shall not be admissible." *Id.* Uniform Jury Instructions 13-1125 and -1126 provide special interrogatories for MMA juries in accordance with these requirements. *See* UJI 13-1125 ("If your verdict is for the plaintiff, do you find that plaintiff is in need of future medical care and related benefits?"); UJI 13-1126 ("What do you find was the value or cost of past medical care and related benefits received by the plaintiff?"). Other than these

16

differing procedural instructions, the same jury instructions are used for medical malpractice claims under the MMA and medical negligence claims at common law.

{27} The procedural differences between MMA and non-MMA claims demonstrate that the Legislature intended to change how the courts facilitate and administer remedies when a plaintiff brings a medical malpractice action against a qualified health care provider under the MMA. *See Inc. Cnty. of Los Alamos v. Johnson*, 1989-NMSC-045, ¶ 4, 108 N.M. 633, 776 P.2d 1252 ("We . . . presume that the legislature intends to change existing law when it enacts a new statute."). However, in passing the MMA, the Legislature did not change the *essential substantive elements* that a plaintiff must prove in order to hold any health care provider liable for medical negligence. Put differently, with respect to the required elements a plaintiff must prove in order to succeed in either an MMA claim for medical malpractice or a common-law claim for medical negligence, the core substance of the causes of action is the same. The identical substantive jury instructions for both MMA and non-MMA cases belie any argument to the contrary.

{28} In applying our approach in *Lisanti*, we conclude that a claim under the MMA is "more generally described" as a cause of action in medical negligence. *See* 2002-NMSC-032, ¶ 13. Our conclusion satisfies the first of our two-part inquiry to determine whether the constitutional jury right attaches to Plaintiff's claim under the

17

MMA. We turn now to the second question whether common-law medical negligence claims were tried by a jury when the New Mexico Constitution took effect.

**2.      Medical negligence claims were triable by jury prior to the adoption and effective date of the New Mexico Constitution**

{29}     Having concluded that claims under the MMA are essentially claims of medical negligence, we now examine whether medical negligence claims would have been tried by juries in New Mexico at the time the New Mexico Constitution was adopted on January 21, 1911, to become effective on January 6, 1912, when New Mexico was admitted into the union. *See* N.M. Const. art. XXII, § 1 ("This constitution shall take effect and be in full force immediately upon the admission of New Mexico into the union as a state."); Proclamation of President Taft, 37 Stat. 1723 (1912). The district court determined in its March 23, 2018, order that the constitutional jury right attached to causes of action under the MMA because juries heard medical negligence cases at American common law prior to the adoption of the New Mexico Constitution. Based on the following historical analysis, we agree.

{30}     There does not appear to have been a reported appellate opinion concerning a claim of medical negligence prior to the effective date of the New Mexico Constitution. *See* Jerrald J. Roehl, *The Law of Medical Malpractice in New Mexico*, 3 N.M. L. Rev. 294, 294 n.6 (1973). In fact, medical negligence as a cause of action

18

does not appear in the state appellate record until 1954. *Id.*; *Los Alamos Med. Ctr., Inc. v. Coe*, 1954-NMSC-090, 58 N.M. 686, 275 P.2d 175. Broadening the scope of our review of state case law to include causes of action that are similar to medical negligence, we find that cases of personal injury tort were tried by juries in the Territory of New Mexico prior to statehood. *See, e.g.*, *Schmidt v. Sw. Brewery & Ice Co.*, 1910-NMSC-001, ¶¶ 8-9, 15 N.M. 232, 107 P. 677. In 1876, the New Mexico Territorial Legislature adopted "the common law as recognized in the United States of America," NMSA 1978, § 38-1-3 (1876), so we turn to review the common law of other American jurisdictions, as well as that of England.

{31}    The first reported case of medical negligence occurred in England in 1374. Roehl*, supra,* at 294 n.2. Medical negligence claims were tried by juries in the United States as early as 1794. *See Cross v. Guthery*, 2 Root 90, 91 (Conn. 1794). A survey of these historical pieces leads us to conclude that, even though there is not an appellate record of a medical negligence case that was tried by a jury in New Mexico prior to the middle of the twentieth century, causes of action arising in medical negligence would have been triable by a jury under the common law of New Mexico at the time the New Mexico Constitution took effect.

{32}    Based on these historical examples and our conclusion that causes of action under the MMA can be *more generally described* as causes of action in medical

negligence, we hold that the constitutional right to trial by jury attaches to causes of action brought under the MMA. To the extent that the Court of Appeals' opinion in *Salopek* differs from this conclusion, that opinion is hereby overruled. Though we overrule *Salopek* on the grounds noted herein, we must address the district court's failure to apply *Salopek* in its consideration of Defendants' motion to reduce the judgment from the full jury award in this case.

### 3. The district court erred by declining to apply binding precedent

{33} In denying Defendants' motion to conform the amount of the jury verdict with the MMA nonmedical, nonpunitive damages cap, the district court concluded that the Legislature did not create a wholly new statutory cause of action with the enactment of the MMA. While we agree with this conclusion in substance, the district court erred by failing to apply the Court of Appeals' holding in *Salopek* that the MMA nonmedical, nonpunitive damages cap did not violate Plaintiff's state constitutional right to a jury trial. *See Salopek*, 2013-NMCA-087, ¶ 58. "The general rule is that a court lower in rank than the court which made the decision invoked as a precedent cannot deviate therefrom and decide contrary to that precedent, irrespective of whether it considers the rule laid down therein as correct or incorrect." *Alexander v. Delgado*, 1973-NMSC-030, ¶ 9, 84 N.M. 717, 507 P.2d 778

(internal quotation marks and citation omitted). In this instance, the district court was bound by the Court of Appeals' opinion in *Salopek*.

**B.    The MMA Nonmedical, Nonpunitive Damages Cap Does Not Invade the Province of the Jury**

{34}    Though we hold that the constitutional right to trial by jury attaches to causes of action brought under the MMA, we must now address Defendants' argument that the damages cap of Section 41-5-6(A) does not infringe the right to trial by jury because the cap merely "restricts the scope" of the remedy available to Plaintiff. According to Defendants, the MMA nonmedical, nonpunitive damages cap does not interfere with the jury's duty to decide the "true issues of fact." *See Sanchez v. Gomez*, 1953-NMSC-053, ¶ 8, 57 N.M. 383, 259 P.2d 346. Rather, the damages cap applies only after the jury has completed its role as fact-finder.

{35}    Plaintiff responds that the determination of the full amount of damages awarded a given plaintiff is "within the exclusive province of the jury," relying on *Hood v. Fulkerson*, 1985-NMSC-048, ¶ 10, 102 N.M. 677, 699 P.2d 608. Plaintiff contends that "capping damages amounts to a partial abrogation of the jury-trial right." In light of the "inviolate" nature of the constitutional jury right, Amici, New Mexico Trial Lawyers Association and American Association for Justice, assert that outside the context of judicial remittitur, any limit on the jury-found damages award violates the right to trial by jury.

21

{36}     Plaintiff's reliance on *Hood* is not dispositive of the question before us: whether the constitutional right to trial by jury invalidates the MMA's nonmedical, nonpunitive damages cap and guarantees Plaintiff full recovery of the jury's verdict. In *Hood*, we concluded that the district court erred when it altered the amount of the jury's verdict in a negligence action based on the district court's understanding that the jury may have been confused. *See* 1985-NMSC-048, ¶¶ 2-4, 10. We explained that "if the court felt the jury verdict was not clear or correct, it should have instructed the jury to amend the verdict to clearly state the wishes of the jury." *Id.* ¶ 11. For the district court to alter the amount of the jury's verdict was impermissible. *Id.* ¶¶ 10-11. Though we stated that determining the "proper amount for damages" was in the "exclusive province of the jury," the holding of *Hood* does not answer the question whether a jury-found damages award is immune from subsequent reduction pursuant to a statutory damages cap. *See id.* ¶ 10.

{37}     We agree with the Court of Appeals' framing of this analysis: "[T]he 'inviolate' guarantee of a jury trial 'simply means that the jury right is protected absolutely in cases where it applies; the term does not establish what that right encompasses.'" *Salopek*, 2013-NMCA-087, ¶ 51 (quoting *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 263 (5th Cir. 2013)). However, because the *Salopek* Court determined that the constitutional jury right did not apply to MMA claims, *see*

22

*id.* ¶ 50, it did not engage the second part of the inquiry: What does the constitutional right to trial by jury encompass?

{**38**}    To answer this question, we start with the language of Article II, Section 12 and conduct a historical review of the jury trial right as it existed in the United States prior to the adoption and effective date of the New Mexico Constitution. We then delineate the role of the jury based on New Mexico precedent and statutory history, as well as the United States Supreme Court's interpretation of the jury's function. Finally, we examine several out-of-state cases where courts were asked, as we are today, whether statutory damages caps violate their respective constitutional provisions guaranteeing the right to trial by jury. Following this analysis, we conclude that the MMA nonmedical, nonpunitive damages cap merely gives legal consequence to the jury's finding on damages and therefore does not infringe the guarantee of Article II, Section 12.

{**39**}    As we have previously stated, Article II, Section 12 provides that "[t]he right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate." To interpret this constitutional provision, we must determine (a) the proper definition of the term "inviolate" and (b) the scope of the right to trial by jury in civil actions at the time the New Mexico Constitution took effect.

## 1. Interpretation of "inviolate"

{40}   The Court of Appeals has stated that the constitution's requirement that the right to jury trial shall "remain inviolate" means that the right is "protected absolutely" where it applies. *Salopek*, 2013-NMCA-087, ¶ 51 (internal quotation marks and citation omitted). Similarly, *Black's Law Dictionary* defines "inviolate" as "[f]ree from violation; not broken, infringed, or impaired." *Inviolate*, *Black's Law Dictionary* (11th ed. 2019). Some state courts have interpreted "inviolate" to mean "not disturbed or limited" and have used this definition to strike down statutory damages caps. *Hilburn v. Enerpipe Ltd.*, 442 P.3d 509, 514-16, 524 (Kan. 2019) (internal quotation marks and citation omitted); *see Sofie v. Fibreboard Corp.*, 771 P.2d 711, 721-22, 728 (Wash. 1989) ("Applied to the right to trial by jury, this [constitutional] language indicates that the right must remain the essential component of our legal system that it has always been. For such a right to remain inviolate, it must not diminish over time and must be protected from all assaults to its essential guarantees."). Other courts have interpreted "inviolate" to mean "freedom from . . . partial destruction or substantial impairment" but have emphasized that an "inviolate" right is not "immun[e] from all regulation." *Humphrey v. Eakley*, 60 A. 1097, 1098 (N.J. 1905); *see Commonwealth v. Fugmann*,

24

198 A. 99, 111 (Pa. 1938) (concluding that "'inviolate' . . . does not import rigidity of regulation in the manner of impaneling a jury").

{41} Our Court of Appeals adopted this broader interpretation in concluding that the procedural requirements to make a timely jury demand under a precursor to Rule 1-038 NMRA were "reasonable rules" that were not precluded by Article II, Section 12. *Carlile v. Continental Oil Co.*, 1970-NMCA-051, ¶¶ 7-9, 81 N.M. 484, 468 P.2d 885 ("[R]easonable regulatory provisions, although different in form and substance from those in effect at the adoption of the Constitution, do not abridge, limit or modify the right which is to remain inviolate." (internal quotation marks and citation omitted)). The common thread through all these interpretations is that an inviolate right is one that must remain intact and unbroken. We conclude that an inviolate right is not beyond the reach of regulation, so long as that regulation does not substantially impair the core essence of the right. We now consider how the framers of our constitution understood the right to trial by jury so we may determine how the core essence of that right must be protected and applied today.

## 2. Historical analysis of the right to jury trial

{42} The role of the jury has evolved significantly since the first jury trials were held in colonial America. From the late-seventeenth century through the American Revolution, juries in some of the colonies wielded broad authority over both legal

25

and factual issues. *See* Stephan Landsman, *The Civil Jury in America: Scenes from an Unappreciated History*, 44 Hastings L.J. 579, 592-93 (1993); Morton J. Horwitz, *The Transformation of American Law, 1780-1860* 142-43 (1977). For this reason, the colonists were "preoccupied with safeguarding the jury right, relying upon the jury to restrain government." Landsman, *supra,* at 593. For example, in Massachusetts, juries "were the chief assessors of legal claims and the primary enforcers of legal rights for their communities." *Id.* at 592. Jury trials were conducted before three judges, who were empowered to instruct the jury on their "divergent view[s] of the law." *Id.* In these cases, counsel was allowed to argue legal questions to the jury during closing arguments. *Id.* By returning a verdict that both interpreted the law and applied that law to the facts of the case, "the jury had broad control over legal as well as factual issues and was therefore the ultimate authority in the courtroom process." *Id.* at 593; *cf.* Horwitz, *supra*, at 143 ("[T]he practice of Connecticut judges was simply to submit both law and facts to the jury, without expressing any opinion or giving them any direction on how to find their verdict.").

{43}     By way of contrast, in New York, the jury was theoretically bound to apply the instructed law to the facts of the case. Landsman, *supra*, at 593. However, the practice of jury nullification, where in some circumstances jurors reviewed and rejected the instructed law, gave the jury tremendous power to subvert the British

26

legal system and wrest control from British judges. *See id.* In a prominent 1734 seditious libel case, the jury was instructed to convict the defendant journalist, John Peter Zenger, if it found that he had in fact printed accusations of corruption and misfeasance against the Governor of New York, William Cosby. *Id.* The evidence was clear that the accusations were printed by Zenger, but Zenger's counsel argued that the jury could contravene the judge's legal instructions and acquit Zenger if it found that Zenger's accusations were true. *Id.* The jury's ultimate acquittal of Zenger sent a message that "judges do not necessarily have absolute control over questions they designate as 'legal,'" and fortified the colonists' defense of the right to trial by jury as a means of popular control of the justice system. *Id.*

{44} Following the Revolution, the jury lost much of the prominence it had once enjoyed and ceased being the primary method of asserting democratic control over local government. *Id.* at 597-98. Juries were no longer required as a check on biased British judges, and the emergence of democratically elected state legislatures meant that "the right to jury review or nullification of laws was less important amidst legitimately established democratic laws." *Id.* at 598. Accordingly, the United States Constitution did not include any reference to civil juries. *Id.* However, this exclusion garnered significant protest led by the Antifederalists who feared an "unconstrained federal judiciary." *Id.* at 599-600. That protest resulted in the drafting of the Seventh

27

Amendment, preserving the right to a jury in civil cases where the value in controversy exceeded twenty dollars. *Id.* at 600; U.S. Const. amend. VII.

{45}    In the decades that followed, the power of the jury to shape the law through jury nullification was greatly diminished. The nineteenth century saw a wave of judicial reform intended to vest more power in judges to determine the legal outcome in tort cases. *See* Landsman, *supra*, at 605; Horwitz, *supra*, at 143-44. One vehicle for this reform was the rise of the doctrine of contributory negligence, which was recognized in the Territory of New Mexico as early as 1884, *Alexander v. Tennessee & Los Cerrillos Gold & Silver Mining Co.*, 1884-NMSC-021, ¶ 19, 3 N.M. 255, 3 P. 735, and was not abandoned in our jurisprudence until 1981, *Scott v. Rizzo*, 1981-NMSC-021, ¶¶ 4-5, 96 N.M. 682, 634 P.2d 1234 (replacing the doctrine of contributory negligence with the doctrine of comparative fault) *superseded in part by statute*, NMSA 1978, § 41-3A-1 (1987). *See* Landsman, *supra*, at 606. Under the doctrine of contributory negligence, a plaintiff was completely barred from recovery if it could be shown that the plaintiff's own negligence contributed to his or her injury. *See Scott*, 1981-NMSC-021, ¶ 11 (explaining the holding of *Butterfield v. Forrester*, 11 East 60, 103 Eng. Rep. 926 (K.B. 1809), which is widely considered the progenitor of the doctrine of contributory negligence). In cases where the facts supported a plaintiff's contributory negligence, "the judge could dismiss a case as a

matter of law, without ever submitting the matter to the jury." Landsman, *supra*, at 606. Alternatively, the judge could instruct the jury that the plaintiff could not recover any damages if the plaintiff acted negligently and "brought an injury on himself[.]" *Alexander*, 1884-NMSC-021, ¶¶ 36-37 (internal quotation marks and citation omitted). In this respect, the doctrine of contributory negligence operated to curtail the jury's power to award damages in tort cases. *See* Landsman, *supra*, at 606.

{46}   At the same time, legislative restrictions began mandating that juries apply the legal instructions provided by the judge. Horwitz, *supra*, at 142-43 ("By 1810, it was clear that the instructions of the court, originally advisory, had become mandatory and therefore juries no longer possessed the power to determine the law."). These procedural reforms worked to further limit the jury's function to solely that of fact-finder. *See id.*; Landsman, *supra*, at 605.

{47}   The twentieth century saw a crystallization of the jury's singular function to resolve issues of fact. The United States Supreme Court declared that the purpose of the jury in civil cases was "to assure a fair and equitable resolution of factual issues," *Colgrove v. Battin*, 413 U.S. 149, 157 (1973), and clarified that the finding of damages is one of the factual issues within the ambit of the jury, *see Dimick v. Schiedt*, 293 U.S. 474, 480 (1935). In *Feltner v. Columbia Pictures Television, Inc.*,

29

the United States Supreme Court reviewed the historical role of juries in determining damages awards, concluding that it was commonplace for the jury to award damages in civil cases at common law prior to the adoption of the United States Constitution. *See* 523 U.S. 340, 353 (1998) ("[T]he common law rule as it existed at the time of the adoption of the Constitution was that in cases where the amount of damages was uncertain, their assessment was a matter so peculiarly within the province of the jury that the Court should not alter it." (brackets omitted) (internal quotation marks and citation omitted)).

{48}   In *Feltner*, the plaintiff sued for copyright infringement under the Copyright Act of 1976. *Id.* at 343. In lieu of actual damages, the plaintiff sought statutory damages under the Copyright Act, which were capped at $20,000 per instance of infringement. *Id.* The district court denied the defendant's demand for a jury trial on statutory damages, instead ruling that statutory damages would be determined at a bench trial. *Id.* at 344. The defendant asserted that a bench trial on damages violated his right to a jury under the Seventh Amendment. *See id.* at 342. The United States Supreme Court agreed, holding that "if a party so demands, a jury must determine the actual amount of statutory damages under [the Copyright Act] in order to preserve the substance of the common-law right of trial by jury." *Id.* at 355 (internal quotation marks and citation omitted). *Feltner* stands for the proposition that the

30

right to a trial by jury includes the right to have the jury—not the judge—find the amount of damages. New Mexico history conforms with the *Feltner* Court's determination that juries found the amount of damages at common law prior to the adoption of both the United States and New Mexico Constitutions.

{49} During the territorial period, juries in New Mexico heard civil tort cases and determined the amount of damages in those cases. *See, e.g.*, *Schmidt*, 1910-NMSC-001, ¶¶ 8-9 (upholding the jury's verdict on damages in a case of employer liability for personal injury). The territorial laws in effect at the time of the adoption of the New Mexico Constitution instructed that "after hearing the evidence, the jury shall be kept together . . . until they agree upon a verdict . . . , and when the jurors shall agree upon a verdict, they shall deliver the same to the justice, who is required to give judgment thereon and to award execution as hereinafter directed." Section 3267, C.L. 1897. This territorial statute serves to illustrate Defendants' argument that a jury verdict is a resolution of fact that only becomes a legal requirement to compensate the plaintiff once the court enters judgment on the verdict.

{50} Our historical analysis of the evolving role of the jury reveals that though the jury may once have exercised an ability to shape the legal as well as factual resolutions in a civil case, by the time the New Mexico Constitution took effect in 1912, the jury's role was limited to that of fact-finder. Based on this analysis, we

31

conclude that the right to trial by jury is satisfied when evidence is presented to a jury, which then deliberates and returns a verdict based on its factual findings. The legal consequence of that verdict is a matter of law, which the Legislature has the authority to shape. *See Jones v. Murdoch*, 2009-NMSC-002, ¶ 25, 145 N.M. 473, 200 P.3d 523 ("We have long recognized that the Legislature may exercise its plenary power to alter the common law.").

{51}     In passing the damages cap of Section 41-5-6(A), the Legislature restricted the scope of the available legal remedy for injury resulting from the medical malpractice of a qualified health care provider. However, nothing in Section 41-5-6 abridges Plaintiff's right to present evidence before a jury for "a fair and equitable resolution" of the facts of the case. *See Colgrove*, 413 U.S. at 157. Therefore we hold that the MMA nonmedical, nonpunitive damages cap of Section 41-5-6(A) does not violate Plaintiff's right to a jury trial under Article II, Section 12.

{52}     The great weight of persuasive authority on the question whether statutory damages caps violate the constitutional jury right supports our conclusion in this case. In *Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, the Court of Appeals rejected the plaintiffs' argument that the cap on damages under the Tort Claims Act infringed the right to trial by jury. *See* 2010-NMCA-021, ¶¶ 44-45, 147 N.M. 720, 228 P.3d 504, *cert. quashed*, 2010-NMCERT-002, 147 N.M. 705, 228 P.3d 489. Though the

case was decided on other grounds, the Court of Appeals stated that it failed to see how "the right to a jury incorporate[s] a right to maximum recovery." *Id.* ¶ 45. We agree.

**{53}** Turning to out-of-state cases,[3] the Oregon Supreme Court in *Horton v. Oregon Health & Sci. Univ.* conducted a thorough historical analysis of the right to jury trial. 376 P.3d 998, 1036-40 (Or. 2016). That court concluded that the history of the jury right in England and America revealed that the constitutional provision of an "inviolate" right to jury trial does not "limit[] the legislature's authority to define, as a matter of law, the substantive elements of a cause of action or the extent to which damages will be available in that action." *Id.* at 1036, 1040.

**{54}** The Virginia Supreme Court concluded similarly, holding that the statutory damages cap in medical malpractice actions does not violate Virginia's constitutional provision that a "trial by jury is preferable to any other, and ought to be held sacred." *Pulliam v. Coast Emergency Servs. of Richmond, Inc.*, 509 S.E.2d 307, 312-15 (Va. 1999) (quoting Va. Const. art. I, § 11). That court reasoned that "[i]f it is permissible for a legislature to enact a statute of limitations completely barring recovery in a particular cause of action without impinging upon the right of trial by jury, it should be permissible for the legislature to impose a limitation upon the amount of recovery as well." *Id.* at 314. Following this logic, since we have upheld the New Mexico Legislature's authority to foreclose a medical malpractice action three years after the alleged act of malpractice under the MMA's statute of repose, *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶¶ 1, 39-42,

34

[3] Of the thirty jurisdictions to consider whether a statutory cap on damages violates the constitutional right to trial by jury, twenty-four have upheld such caps, reasoning that a statutory limit on recovery is a matter of law within the purview of the state legislature. Sixteen of these jurisdictions analyzed constitutional provisions of an "inviolate" right to trial by jury. *See Evans ex rel. Kutch v. State*, 56 P.3d 1046, 1050 (Alaska 2002) (deciding in an equally divided opinion that the damages cap does not infringe the jury right); *Chan v. Curran*, 188 Cal. Rptr. 3d 59, 80-82 (Cal. Ct. App. 2015) (concluding that the damages cap does not infringe the "inviolate" jury right); *Univ. of Miami v. Echarte*, 618 So. 2d 189, 191 (Fla. 1993) (deciding without discussion that damages cap does not "violate the right to trial by jury," which the state constitution declares "inviolate"); *Kirkland v. Blaine Cnty. Med. Ctr.*, 4 P.3d 1115, 1118-20 (Idaho 2000) (same); *Johnson v. St. Vincent Hosp., Inc.*, 404 N.E.2d 585, 601-02 (Ind. 1980) (same), *overruled on other grounds by In re Stephens*, 867 N.E.2d 148, 156 (Ind. 2007); *Murphy v. Edmonds*, 601 A.2d 102, 106 & n.3, 118 (Md. 1992) (concluding that the damages cap does not infringe on the jury right that must be "inviolably preserved" as stated in Article 23 of the Maryland Declaration of Rights); *English v. New England Med. Ctr.*, 541 N.E.2d 329, 331-32 (Mass. 1989) (concluding that the damages cap for charitable institutions in medical malpractice actions does not violate the jury right); *Phillips v. Mirac, Inc.*, 685 N.W.2d 174, 180-83 (Mich. 2004) (concluding that the damages cap does not infringe the "inviolate" jury right); *Gourley ex rel. Gourley v. Neb. Methodist Health Sys., Inc.*, 663 N.W.2d 43, 74-75 (Neb. 2003) (per curiam) (concluding that the damages cap does not infringe the "inviolate" jury right); *Tam v. Eighth Jud. Dist. Ct.*, 358 P.3d 234, 238 (Nev. 2015) (same); *Larimore Pub. Sch. Dist. No. 44 v. Aamodt*, 2018 ND 71 ¶¶ 24, 27-28, 908 N.W.2d 442, 453-54 (concluding that the tort damages cap does not infringe the "inviolate" jury right); *Arbino v. Johnson & Johnson*, 116 Ohio St. 3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶¶ 32, 36-42 (concluding that the general tort damages cap does not infringe the "inviolate" jury right); *Horton*, 376 P.3d at 1036, 1044 (concluding that the damages cap does not infringe the "inviolate" jury right); *Zauflik v. Pennsbury Sch. Dist.*, 104 A.3d 1096, 1132-33 (Pa. 2014) (same); *McClay v. Airport Mgmt. Servs., LLC*, 596 S.W.3d 686, 690-93 (Tenn. 2020) (same); *Judd v. Drezga*, 2004 UT 91, ¶ 35, 103 P.3d 135 (concluding that the cap on "quality of life" damages does not infringe the "inviolate" jury right); *Etheridge v. Med. Ctr. Hosps.*, 376 S.E.2d 525, 528-29 (Va. 1989) (concluding that the statutory limit on recovery "effects no impingement upon the right to a jury trial"); *MacDonald v. City Hosp., Inc.*, 715 S.E.2d 405, 414-15 (W. Va. 2011) (concluding that the legislative limit on claims for pain and suffering

121 N.M. 821, 918 P.2d 1321; § 41-5-13, we must also conclude that the Legislature may impose a damages cap in such actions. Both restrictions are aimed at curtailing the legal remedy available to redress a plaintiff's injury and are consistent with the constitutional jury right.

{55}    Finally, in *Learmonth*, a case cited by the Court of Appeals in *Salopek*, the Fifth Circuit concluded that a statutory noneconomic damages cap did not violate Mississippi's "inviolate" constitutional jury right. *Learmonth*, 710 F.3d at 258; Miss. Const. art. III, § 31. Because the jury was unaware of the damages cap, the

---

has no impact on the constitutional right to trial by jury); *Maurin v. Hall*, 2004 WI 100, ¶¶ 96-100, 274 Wis. 2d 28, 682 N.W.2d 866 (concluding that the damages cap does not infringe the "inviolate" jury right), *overruled on other grounds by Bartholomew v. Wis. Patients Comp. Fund & Compcare Health Servs. Ins. Corp.*, 2006 WI 91, ¶¶ 16-18, 293 Wis.2d 38, 717 N.W.2d 216; *see also Davis v. Omitowoju*, 883 F.2d 1155, 1159-61 (3d Cir. 1989) (concluding that the Seventh Amendment does not preclude the damages cap); *Boyd v. Bulala*, 877 F.2d 1191, 1196 (4th Cir. 1989) (same); *Smith v. Botsford Gen. Hosp.*, 419 F.3d 513, 519 (6th Cir. 2005) (same); *Learmonth*, 710 F.3d at 258-61 (concluding that the damages cap does not infringe Mississippi's "inviolate" jury right); *Schmidt v. Ramsey*, 860 F.3d 1038, 1045-46 (8th Cir. 2017) (concluding that Nebraska's statutory damages cap does not violate the Seventh Amendment); *but see Moore v. Mobile Infirmary Ass'n*, 592 So. 2d 156, 159-65 (Ala. 1991) (concluding that the damages cap infringes the "inviolate" jury right); *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 691 S.E.2d 218, 221-24 (Ga. 2010) (same); *Hilburn*, 442 P.3d at 514-16 (same); *Watts v. Lester E. Cox Med. Ctrs.*, 376 S.W.3d 633, 640-41 (Mo. banc 2012) (same); *Knowles v. United States*, 1996 SD 10, ¶¶ 9-16, 544 N.W.2d 183, 186-88 (same), *superseded by statute on other grounds as stated in Millea v. Erickson*, 2014 S.D. 34, ¶ 13, 849 N.W.2d 272, 276; *Sofie*, 771 P.2d at 721-22 (same).

36

*Learmonth* Court reasoned that the statute did "not invade the jury's factfinding process." *Id.* at 260. Section 41-5-6(A) likewise provides that the jury shall not be informed of the damages cap, so we are further affirmed that the MMA nonmedical, nonpunitive damages cap does not invade the jury's role as fact-finder.

## III.    CONCLUSION

{56}    For the foregoing reasons, we hold that the MMA nonmedical, nonpunitive damages cap does not violate the constitutional right to trial by jury of Article II, Section 12. We remand this case to the district court to conform the judgment in accordance with Section 41-5-6(A).

{57}    **IT IS SO ORDERED.**

_____

**BARBARA J. VIGIL, Justice**


**WE CONCUR:**


_____

**C. SHANNON BACON, Justice**


_____

**DAVID K. THOMSON, Justice**

**JUDITH K. NAKAMURA, Justice, Retired**
**Sitting by designation**

**CONRAD F. PEREA, Judge**
**Sitting by designation**

38